THE STATE OF MISSOURI, Respondent, v. CHARLES F. KRING, Appellant.

### March 20, 1876.

1. A person charged with a criminal offense, if brought into court ironed, should have the fetters removed, at least from his wrists, during arraignment and trial, and this even though he be fettered because he is considered dangerous, or to guard against an escape.

2. In a trial for murder it is not competent for the defense to prove the contents of letters written by the accused to the deceased.

3. Where the letters and papers found on the accused at the time of his arrest are brought into court, and counsel for the accused, without examining their contents, consent that they may all be offered in evidence and read to the jury by the State, it is too late, on a motion for a new trial, to object that these letters prejudiced the accused, and that counsel had no time to examine them.

4. After the conclusion of the testimony for the State, it should not be reopened. But where a witness for the State was recalled after defendant had opened, for the purpose of being asked a question which he was not permitted to answer, this is no ground for a new trial.

5. Great latitude is allowed counsel in their address to the jury, and, although the line of legitimate argument seems to have been overstepped by the counsel for the State, where the trial court has refused to interfere, the judgment will not be reversed on this ground, unless it is quite clear that the remarks were improper and calculated to prejudice the prisoner.

6. It is not error to instruct a jury that they are not bound to take as true declarations of the accused that have been offered in evidence.

APPEAL from St. Louis Criminal Court.

*Reversed and remanded.*

*McDonald, Turner & Jones*, for appellant, cited: 4
Bla. Com. 323; 1 Bishop on Cr. Proc. 731, 956; La-
zer's Case, 16 Howell's St. Tr. 94, 100; Rex v. Waite, 1
Leach, 28; 1 Greenl. on Ev. 102; Grant v. Thompson, 4
Conn. 203; Kinnie v. Kinnie, 9 Conn. 102; McLean v. The
State, 16 Ala. 680; United States v. Sharp, 1 Pet. C. Ct.
118; State v. Mix, 15 Mo. 153; State v. Mary, 5 Mo. 81;
Horkins v. The State, 11 Ga. 96; State v. Klinger, 43 Mo.
133; Commonwealth v. Eddy, 7 Gray (Mass.), 583.

*J. C. Normile*, Circuit Attorney, for respondent.

BAKEWELL, J., delivered the opinion of the court.

The defendant was indicted by the grand jury of the
county of St. Louis for murder, in killing Dora Broemser.
At the November term, 1875, of the Criminal Court he
was tried and convicted of murder in the first degree. A
motion for a new trial having been heard and overruled,
defendant was, on February 5, 1876, sentenced to be hanged
on the ensuing 24th of March. All exceptions having been
saved, the cause is brought here by appeal.

The counsel for appellant have insisted that many errors
were committed by the court below. We have carefully scru-
tinized the record, and find error in one respect alone. The
other objections will be noticed in their order in the course
of this opinion, but have all been found to be of an unsub-
stantial character, and none of the alleged errors, with that
exception, have, in our opinion, any foundation at all.

1. The record sets forth that, " on the 21st of December,
1875, the cause came on for trial, defendant being present
in open court, and represented by his counsel, and the
circuit attorney being present, who represented the State.
Defendant was brought to the bar of the court, and,
having announced through his counsel his readiness for
trial, the court thereupon ordered the trial to proceed.
Defendant being ironed with handcuffs, or manacles, upon
his hands and wrists, his counsel then and there made a
motion to the court to have the same removed, which the

court refused to do, overruling the motion, the court stating that an assault made by the accused on J. G. Broemser, husband of deceased, in open court, when the accused was last here, was the reason why." Defendant's counsel then and there excepted to the ruling of the court; the trial then proceeded, a jury was impaneled, etc.

It is laid down in the ancient books of the law that, though under indictment of the highest nature, as murder or high treason, the prisoner must be brought to the bar without irons or any manner of shackles or bonds; unless there be evident danger of an escape, and then he may be secured by irons. 4 Bla. 322. In the case of Layer (16 Howell's St. Tr. 94), who was tried for high treason in 1722, a distinction was taken, and it was held that the prisoner might be brought ironed, to the bar, for arraignment, but that his shackles must be stricken off at the trial. "My lord," said the prisoner, in the report of that cause, "I hope I shall have these chains taken off, that I may have the free use of that reason and understanding which God hath given me." To which the Lord Chief Justice replies: "As to the chains you complain of, it must be left to those to whom the custody of you is committed to take care that you may not make your escape; when you come to your trial, then your chains may be taken off." To which counsel for the prisoner said: "Your lordship hath limited it as an indulgence extended to him when he comes to his trial that his irons shall be taken off; but I humbly insist upon it that *by law* he ought not to be called upon even to plead till his fetters are off. My Lord Coke (3 Inst. 35) is clearly of that opinion in his Pleas of the Crown; and it is admitted on all hands that, when he comes to be tried, his shackles must be off; and upon debate it was so determined in Cranburne's case. 13 Howell, 222. The only reason for putting of irons at all on a prisoner is to keep him in safe custody; and the reason why they are taken off in the course of proceedings against

him in a court of justice seems to be that his mind should not be disturbed by any uneasiness his body or limbs should be under." And Ketelby, for the prisoner, says: " He is entitled to have his chains off before he pleads, in point of law ;" and he cites abundant authority. Lord Chief Justice said: " No doubt, when he comes upon his trial, the authority is that he is not to be *in vinculis* during his trial, but should be so far free that he should have the use of his reason and all advantages to clear his innocence. Here he is only called on to plead by advice of his counsel; he is not to be tried now; when he comes to be tried, if he makes that complaint, the court will take care that he shall be in a condition proper to make his defense; but when he is only called on to plead, and his counsel by him to advise him what to plead, why are his chains to be taken off this minute, and to be put on again the next?"

In Cranburne's case (A. D. 1696, 13 Howell), when the defendant was brought to the bar in irons (and it differed from the case of Layer in this, that the prisoner was called upon to plead and was tried at the same time), the Lord Chief Justice (Holt) exclaims: "Look you, keeper; you should take off the prisoners' irons when they are at the bar, for they should stand at their ease when they are tried."

And in Waite's case (1 Leach, 43), the prisoner, at the time of his arraignment, desired that his irons might be taken off; but the court informed him that they had no authority for that purpose until the jury were charged to try him. He accordingly pleaded not guilty; and, being put upon his trial, the court immediately ordered his fetters to be knocked off.

And Hawkins says (2 P. C., ch. 28): " Every person, at the time of his arraignment, ought to be used with all the humanity and gentleness that is consistent with the nature of the thing, and under no other terror and uneasiness than what proceeds from a sense of his guilt and the misfortune

of his present circumstances ; and, therefore, ought not to be brought to the bar in a contumelious manner, as with hands tied together, or any other mark of ignominy or reproach, nor even with fetters on his feet, unless there be some danger of a rescue or escape."

And though fetters be allowed on the feet, in case of danger of an escape, all the authorities say that his hands must not be bound, as was done to the prisoner in the case at bar.   Coke says so, quoting Bracton and Fleta (2 Inst. 315).

Bracton's language is : " *Cum autem captus coram justiciariis producendus fuerit, produci non debet ligatis manibus, quamvis aliquando compedibus propter periculum evasionis.*" He shall not be brought before the justices with his hands bound, though sometimes, on account of danger of escape, his feet are fettered.

And Fleta, speaking of prisoners when brought up for trial, says : "*Non producantur ligati, ne videantur respondere coacti.*"

So that the rule is unchanging, and at least as old as Magna Charta.

It is not pretended in this case that there was danger of an escape.   Had this danger existed, however, we are of opinion that some other means must have been taken to prevent it, and that it would have been error, even then, to keep the prisoner's hands fettered in the presence of the jury during the trial of the case.

It is said in excuse that the prisoner, when last there—by which is probably meant when last in court—had made an assault upon a by-stander.   The by-stander assaulted on the former occasion is named in the record, and was not a person whose attendance at the trial was required as counsel, witness, juryman, or officer of the court.   It does not appear what interval of days, weeks, or months existed between this former assault and the day of trial ; nor that there was any ground to suppose that such an assault would

be renewed. But, be that as it may, it was no sufficient reason for compelling the prisoner to stand his trial for his life with gyves upon his wrists and his hands bound together. Officers of the court could have been placed around him, if he was considered dangerous to by-standers; or he might have been placed in an inclosed space within the bar of the court, as was the English custom. Any proper precautions against escape, or to guard against danger of violence from a prisoner, may be taken during the trial; these may be such as will not deprive his counsel of free communication with him, and will not tend to inflict physical torture upon the prisoner, or deprive him of the freest use of his limbs and of all his faculties in that moment of extreme jeopardy. But it is certainly not permitted to fetter his hands; and, if he is brought into court in irons, he is entitled to have them removed whilst actually on trial; and it is error in the court to refuse to order the prisoner to be unbound.

For this error the judgment must be reversed and the cause remanded, but a most careful examination of the record shows that no other error was committed during the course of this protracted trial. We proceed to take up the other suggestions of error, one by one.

2. A witness having stated that she knew of two letters which the defendant wrote to the deceased, defense offered to prove the contents of these letters. The court refused to allow the proposed evidence as to the contents of these letters. There was no error in this. It is true that the defense set up was that defendant was insane at the time of the homicide. But no suggestion of such a defense had been made at the time of this offer of evidence, and, though it is now claimed that the contents of these letters might have tended to throw light on the mental condition of the accused, no such reason was offered for the introduction of this evidence at the time. It was properly excluded.

3. Defendant's counsel offered to prove declarations of the mother-in-law of the deceased, in the presence of defendant and the deceased. It is not said when these alleged declarations were made. They could be no justification of the homicide, and were properly excluded, for more than one reason too obvious to mention.

4. The fourth alleged error assigned is thus set forth in the bill of exceptions : " The marshal being ordered by the court to bring the letters and papers which were found upon the person of the defendant at the time of his arrest, did so, and placed the same in the hands of the prosecuting official. Being written in German, the purport of these letters was unknown to the attorneys on either side ; whereupon counsel for defendant demanded to look at and examine said papers and letters, but was refused by the attorneys for the State, unless the defense would agree that all papers and documents taken from Kring at the time of his arrest should be read in evidence. To this the defense assented, and, thereafter, said papers, having been translated, were read in evidence without objection ; whereby evidence of the crime of arson, committed heretofore, was improperly, as counsel for defense claim, permitted to go to the jury, and extensively commented upon by counsel for the State, all of which was calculated to highly prejudice and inflame the minds of the jury against defendant."

If defendant was prejudiced by the admission of this testimony, it was a consequence of the full consent of his counsel to the introduction of this evidence. The court committed no error in admitting it, for it was not asked to exclude it ; but, on the contrary, it was asked to admit it by counsel on both sides. It was the imprudence of counsel to allow these documents to go in without examination. They were manifestly in the custody of the court, and if the court, on proper application, had refused to allow counsel the necessary opportunity to make the proper investigation of this evidence before putting it in, objection might

have been taken to such action of the court with some show of reason. But to introduce documentary evidence with rash precipitation, and then to complain that the court erred in not giving an opportunity for examination, which it was never asked to afford, is a somewhat unreasonable proceeding on the part of the defense.

5. After the State had rested, and when defendant's counsel had made some progress in examining witnesses for defense, a witness (who had previously been examined in chief for the defense, and discharged) was called to the stand by the judge, and asked the following questions, at the request of a juror, who asked that the witness be recalled: "How soon after the difficulty did you see Mrs. Broemser?" "Did you have any conversation with her?" "Did she tell you what was done on that occasion, as to what Kring did when he stooped over her?" Counsel for defense objected to the recalling of this witness to the stand, as they had opened their case and commenced introducing their evidence, and also to the asking the witness the foregoing questions, on the ground that it was improper, and that the answers to the questions (if answered) would have been incompetent. The court sustained the objection of defendant's counsel as to the witness answering the questions, and he was allowed to retire from the stand. Exceptions were taken by the defense to the action of the court in allowing the witness to be recalled to the stand, and also to the asking of the foregoing questions.

Although the testimony, once closed on the part of the State in a criminal trial, should not be reopened, we fail to see that the court erred in its action in the matter of the recall of this witness. He was not recalled by the State, but by a juror, and, when recalled, was not allowed to utter a word. There was no error in this.

6. In support of a motion for a new trial in the court below, an affidavit was filed of a stenographic reporter who was present at the trial, to the effect that the circuit attorney, in his argument to the jury at the close of the

.case, said, among other things, these: " If you wrong the
:accused by finding him guilty, that wrong can be righted,
because there are two courts above this that the accused
.can have this reversed—the Court of Appeals and the
.Supreme Court. If you are not justified in finding this
man guilty, it is in their power to rectify an error; while if,
.on the other hand, you turn the murderer loose in the com-
munity, no matter how frail might be the foundation on
which you do it, and how frail may be the scaffolding, it
takes him forever in the light of freedom again. You
will. make a wound in this community that will never be
.healed."

It is insisted that the use of such an argument was grossly
·improper and illegal, calculated to mislead the jury and to
induce them to shift the burden of their responsibility to
·the appellate court.

There seems to be some abuse of the great latitude
.allowed to counsel in addressing a jury in remarks of such
.a character as these; but we are not prepared to say that
they were wholly beyond the line of permissible argument.
"The jury can hardly be supposed to have gathered from these
remarks a belief that they would be justified in finding a
verdict of guilty without a moral conviction of guilt; or
·that their action as triers of the fact would be the subject
.of review in the higher court. Had any such danger been
.anticipated, it could have been provided against by an
instruction. Besides, the remarks were made in the pres-
.ence of the trial court, which alone knows how these
.sentences were modified by the context from which, as pre-
.sented to us, they are wholly dissevered. This matter was
urged upon the court below as ground for a new trial, and
·the court considered that the closing address of the circuit
.attorney furnished. no ground for disturbing the verdict.
Nor will we say that it did. We should not have reversed
·the judgment upon this ground.

7. An exception is saved to the action of the Criminal
.Court in giving the following instruction for the State:

" They (the jury) have the right to receive and believe :as true, or to reject and disbelieve as untrue, the whole or any part of the testimony of any witness, or the whole or :any part of the declarations proven to have been made by the defendant."

Any invasion of the province of the jury is clearly wrong, :and where a court undertakes to control the determination of a jury by instructions as to the weight to be given to the testimony of this or that witness, it is error. But to tell the jury they are not bound, because declarations of the defendant are admitted in evidence, to take the statements embraced in any such delarations as necessarily true, is not an instruction calculated to discredit a particular portion of the testimony, but a declaration of law calculated to obviate an error into which a jury might possibly fall, as to the legal effect of testimony of a peculiar character. We do not see that this instruction conflicts with the settled rule that it is error for the court to single out certain testimony and tell the jury that it is entitled to little or great weight. In *State* v. *Hundley*, 46 Mo., the trial court not only told the jury that the testimony of medical experts is not binding on a jury against their own judgment, but further erroneously instructed them to receive all such evidence with distrust, and regard it as entitled to little weight, unless corroborated by the individual judgment of the jury on the same facts. We do not think that the instruction copied above, as given in the case at bar, was indefensible, or that it was error to give it to the jury in this cause.

8. The court refused to give the following instruction, at the instance of defendant:

" If the jury believe from the evidence that, at the time of the shooting, the defendant was so insane as not to know that the act was criminal, the jury should acquit him on the ground of insanity. It is not necessary that the defense of insanity be established beyond a reasonable doubt. It is sufficient if the jury is reasonably satisfied, by the weight

or preponderance of the evidence, that the defendant was insane at the time of the commission of the act."

It was formerly held in this State that the homicide who relies upon the defense of insanity is not entitled to the benefit of a reasonable doubt as to his sanity. *State* v. *McCoy*, 34 Mo. 531. But this rule has been long since abandoned, and the law on this point declared to be as stated in this instruction. *State* v. *Klinger*, 43 Mo. 127. Nevertheless, the court committed no error in refusing this instruction when asked by defendant, since it was sufficiently and unmistakably embodied in the unexceptionable declarations of law which the court actually gave. It is no error to refuse to give two instructions to precisely the same effect.

9. It is said that the court erred in refusing to grant a new trial on the ground of newly-discovered testimony. But the newly-discovered testimony is cumulative. If it was not cumulative, no sufficient ground for the application was shown. It does not appear by affidavit that the defendant did not know of the alleged new testimony from the first.

10. Lastly, it is said that the verdict is against the weight of evidence. This was a question for the jury, and we might leave it there. But we think it fitting to say that it is difficult to conceive, from this record, how any jury could possibly arrive at any other verdict. It is not shown that defendant was insane. The evidence hardly raises a suspicion as to his perfect sanity. That the defendant is a man of inordinate selfishness and vanity, accustomed to indulge his appetites, and a total stranger to self-control, and that he committed, without the faintest provocation, a treacherous, cowardly, and cruel homicide upon the person of a poor, defenseless woman, whom he had grossly abused or villainously slandered, is clear enough. He killed, also, the unborn child which he well knew she then carried in her womb. The record is searched in vain for any circumstance of palliation. But, unless we are to adopt the theory that all crime is the result of madness, and send our criminals to lunatic asylums instead of to the gallows or the

jail, it is difficult to see in this record any evidence of insanity which would cast the shadow of a doubt over the calm conviction of a sense of duty well discharged with which the average juror would record his vote of " guilty " against the defendant in this case.

For the violation, however, of a rule of law made for the protection of the accused, and of which defendant did not have the benefit on the former trial of this cause, the verdict and judgment herein must be set aside, and the cause remanded for a new trial, in accordance with this opinion, and it is so ordered. The other judges concur.