State v. Kring.

STATE OF MISSOURI, Appellant, *vs.* CHARLES F. KRING, Respondent.

1. *Murder, indictment for—Shackles on prisoner—Power of court in criminal trials—Rights of prisoner—Previous assault by.*—As a general rule, a prisoner is entitled, as a matter of right, to be freed from his shackles when brought into the court room for trial, but this rule is not of universal application. The court has the power to take all necessary steps to have the trial a quiet and safe one, even to binding the prisoner with fetters. But there must be some good and sufficient reasons for pursuing such extraordinary course, else the judgment of conviction will be reversed; and the fact that the prisoner had made, in the court room, an assault upon a person, will not justify his being shackled, three months thereafter, when put upon his trial.

2. *Sanity of prisoner—Letters of, when admissible in evidence—Secondary evidence.*—When the sanity of the prisoner is involved, a letter written by him, prior to the commission of the alleged offense, is admissible in evidence to throw light on the condition of his intellect at the time of the act charged. And on its being satisfactorily established that such letter was destroyed, secondary evidence of its contents ought to be admitted.

3. *Instruction erroneous respecting murder in first degree, but harmless.*—Where the lower court gave, for the State, an erroneous instruction respecting the constituent elements of murder in the first degree, as ruled in State vs. Foster (61 Mo. 548) and State vs. Lane (64 Mo. 319), but where the evidence showed that, if defendant was sane, the killing was done with malice prepense and aforethought, and when the instructions for the defendant were very favorable, *held,* the error was not reversible error.

4. *Concluding arguments by circuit attorney—Improper remarks by circuit attorney—Distinction between civil cases and those involving life and liberty.*—The trial court should not permit the circuit attorney to indulge in a line of remark calculated to induce the jury to (do that very common thing) shirk responsibility, by throwing it on the higher courts. (Lloyd v. H. & St. Jo. R. R. Co. (53 Mo. 514), distinguished from the case at bar.

*Appeal from the St. Louis Court of Appeals.*

*J. L. Smith, Att'y Gen'l,* for Appellant, cited: People vs. Harrington, 42 Cal. 165; Phillipson vs. Bates, 2 Mo. 116; State vs. Holme, 54 Mo. 153; State vs. Underwood, 57 Mo. 40; State vs. Starr, 38 Mo. 270.

*R. S. McDonald, with Presley N. Jones,* for Respondent, cited: 16 Howell, State Trials, 94; 13 Id. 222; 5 Id. 979; 4 Bl. Com. 322; 1 Leach, 43; 2 Hale Pleas of Crown, 219; 1 Greenl. Ev. 102; 2 Id. 371; Grant vs. Thompson, 4 Conn. 203; Pratt vs. Coffman, 33 Mo. 76; Dickinson vs. Barber, 9

Mass. 225 ; Kinne vs. Kinne, 9 Conn. 102 ; McLane vs. State, 16 Ala. 680 ; McAlister vs. State, 17 Ala. 434 ; State vs. Scott, 1 Hawks, 32 ; Whart. Cr. Law, § 57 ; People vs. March, 6 Cal. 543 ; Wright vs. Tatem, 1 Ad. & El. 387 ; 7 Ad. & El. 313 ; U. S. vs. Sharp, 1 Pet. C. C. 118 ; State vs. Mary, 50 Mo. 81 ; Freleigh vs. State, 8 Mo. 612 ; Rucker vs. Eddings, 7 Mo. 116 ; State vs. Main, 31 Conn. 577 ; Hoskins vs. State, 11 Ga. 96 ; 22 Ala. 38 ; 21 Id. 549, 558 ; State vs. Foster, 61 Mo. 549 ; State vs. Dunn, 18 Mo. 421 ; State vs. Starr, 38 Mo. 270.

NAPTON, Judge, delivered the opinion of the court.

The defendant was tried and convicted of murder in the first degree, at the November term, 1875, of the Criminal Court of St. Louis, and sentenced to be hanged, but on an appeal to the Court of Appeals of St. Louis, the judgment was reversed and a new trial ordered, and from this last judgment of reversal the State appeals to this court.

As the opinions of the court of appeals are reported and published, it is unnecessary to review the ground upon which their judgment of reversal is based, in which we concur. The English authorities, to sustain the conclusion of the court of appeals, are referred to in the opinion, and also in the brief of the counsel for the defendant, in this court, to which may be added a decision in California (People vs. Harrington, 42 Cal. 165), referred to by the Attorney General. From all these cases, it seems very clear, that without some good reason, authorizing the criminal court to depart from the general practice in England and in this country, the shackles of the prisoner, when brought before the jury for trial, should be removed.

We have no doubt of the power of the criminal court, at the commencement, or during the progress of a trial, to make such orders as may be necessary to secure a quiet and safe one, but the facts stated by the court in this case, as shown by the record, that the prisoner had assaulted a person in court, about three months before the term at which he was tried, would hardly authorize the court to assume that, on his trial for life, he would be guilty of similar outrages. There must be some reason,

based on the conduct of the prisoner, at the time of the trial, to authorize so important a right to be forfeited. When the court allows a prisoner to be brought before a jury with his hands chained in irons, and refuses, on his application, or that of his counsel, to order their removal, the jury must necessarily conceive a prejudice against the accused, as being in the opinion of the judge a dangerous man, and one not to be trusted, even under the surveillance of officers. Besides, the condition of the prisoner in shackles may, to some extent, deprive him of the free and calm use of all his faculties. We, therefore, concur in the opinion of the court of appeals on this point.

We have been unable to perceive, after a careful examination of the record touching that point, why the court refused to allow the contents of defendant's letter to Mrs. Broemser to be established by the witness called for that purpose, who proved their destruction, and who had read the letters. This occurred upon an examination of the second witness, introduced by the defendant to establish his defense, which was exclusively confined to the proof of insanity. Although we have been unable to find any case which decides precisely the question involved in this case, it seems to be generally conceded, that when the question is concerning the sanity or insanity of a person, his acts and declarations previous to, and up to the period, when his capacity for action or his responsibility for his acts is called in question, and even subsequently, are admissible to throw light on the condition of his intellect at the time such acts or declarations occur. His letters are certainly as valuable proof as his verbal declarations.

The case of Wright vs. Doe, *dem.* Tatham (7 Ad. & El. 317), contains a most elaborate discussion of this subject, both by the judges of the court of Queen's Bench, and in the Exchecquer Chamber. The question in that case was as to the capacity of a testator, and letters written to him, and found in his desk after his death, were offered as evidence of his sanity at the time he made his will, although written twenty or thirty years before his death. A majority of the judges in both courts

did not consider the letters admissible, because, upon an examination of the testimony, they were of the opinion that sufficient evidence was not introduced to connect these letters with any act of the testator recognizing their reception. A minority of the judges in both courts, a separate opinion being delivered by each of the judges in both courts, thought the evidence sufficient of acts on the part of the testator, upon their reception, to authorize their introduction. All the judges agreed, that, without such connection being established between the letters and the action of the testator on their reception, the letters were inadmissible.

It will be observed that the letters in question were addressed *to* the person whose sanity was under consideration. In the present case, the letters proposed to be introduced were written *by* the defendant, whose sanity was called in question, and it would seem in such a case, that, in the opinion of the court who decided the case in Wright vs. Doe, there was no question of *their* competency, as declarations of his, to establish the condition of his mind at the time they were written. And if the letters were destroyed, their contents could be established by a witness who had read them. Of course, such letters could be no evidence of the facts stated in them, and the court should so instruct the jury, as was done by the criminal court in this case in reference to other letters introduced, which were found on the person of the prisoner when arrested.

The fifth instruction given by the court on the trial, was as follows: "When killing is done, not accidentally or by mischance, but wilfully, with intent to kill, even though such intent has existed for but a moment before the commission of the act, and with such malice as I have above defined—that is the wilful doing of a wrong act without just cause or excuse—it is murder in the first degree." This instruction, as applied to murder in the first degree, was erroneous, according to the decisions of this court in the case of the State vs. Foster (61 Mo. 548), and the State vs. Lane (64 Mo. 319). The instruction, however, as applied to the facts of the present case, was immaterial and harmless, since all the evidence offered on behalf of the defendant, as well as that offered for the State, proved that the killing

was premeditated and deliberate, if defendant was sane. There was no dispute on this point. The defense was based exclusively on the insanity of the prisoner, upon which subject the instructions given by the court are admitted to have been as favorable to the accused as the law justified.

A point has been made in regard to the propriety of certain remarks of the circuit attorney to the jury in his closing speech, which the bill of exceptions shows to have been as follows : "If you wrong the accused by finding him guilty, that wrong can be righted, because there are two courts above this, in which the accused can have this reversed, the Court of Appeals and the Supreme Court. If you are not justified in finding this man guilty, it is in their power to rectify any error, while, if, on the other hand, you turn the murderer loose in the community, no matter how frail might be the foundation on which you do it, and how frail may be the scaffolding, it takes him forever in the light of freedom again ; you will make a wound in this community that will never be healed."

The statement that the higher courts referred to had the power to review the finding of the jury on the weight of evidence, was calculated to induce the jury to disregard their responsibility. It is unnecessary to decide whether such remarks from the counsel for the State would require the judge to grant a new trial, on their being brought to his attention in a motion for that purpose, since in this case a new trial has already been determined on. The judge presiding at the trial, in our opinion, should not have permitted such remarks to be made on the close of the argument, without a prompt correction. They were probably made through inadvertence, and in the excitement of argument, and we merely notice them to observe their impropriety. The circuit attorney represents the State, and it is presumable that the State has no wish to convict or punish an innocent man. He is employed to see that the laws against criminals are enforced, but he is not required to avail himself of his privilege of concluding the argument before the jury, to state propositions of law which are clearly untenable, with a view to influence the jury in the verdict. This was not a case involving property, but a proceeding involv-

ing life, and the remarks of the court in the case of Llyod vs. Han. & St. Jo. R. R. Co. (53 Mo. 514), must be modified in their application to cases involving life or liberty.

As this case is remanded for a new trial, we decline to express any opinion on the weight of the testimony. That there was some evidence of insanity, seems conceded by the court which tried the case and instructed the jury on that subject. Whether the defendant was incapable of distinguishing between right and wrong, is a question for the jury who will hereafter try him. The instructions on this subject were as favorable to the prisoner as the law warranted, since what is called moral, as contra-distinguished from mental, insanity, is conceded to be insufficient to relieve a party from responsibility for crime.

The judgment of the court of appeals, ordering a new trial, is affirmed. The other judges concur, except Judges Hough and Norton, who were absent at the hearing.