## THE STATE v. TEMPLE, Appellant.

### (No. 2.)

#### Division Two, March 6, 1906.

1. **INFORMATION: Verification.** It is not necessary that an information be based upon the actual knowledge of the prosecuting attorney, but it is only required to be verified upon his information and belief.

2. ——: ——: **Waiver.** When defendant files no motion to quash the information, he waives the question of verification.

3. **JURY: Sworn to Try Case.** Where the record entry, after naming the twelve jurors, proceeds: "twelve good, lawful men, of the body of the county, who are duly tried, impaneled and sworn to try the cause," etc., it cannot be said that the jury was not sworn to try the case. It is not necessary that the oath as administered should be entered of record.

4. **DEFENDANT'S PRESENCE AT TRIAL: Presumption.** When the record shows that defendant was present at the commencement of the trial, it will be presumed, in the absence of evidence to the contrary, that he was present during the whole trial, and at the time the verdict was received.

5. **HANDCUFFING PRISONER.** The court did not err in permitting defendant to be handcuffed while being conducted from

State v. Temple.

the jail to the courthouse and back, especially since it appears from the sheriff's affidavit that defendant was a dangerous and deperate man and that he had broken jail on two other occasions.

6. **ASSAULT WITH INTENT TO KILL: Information.** Information for assault with intent to kill *held* sufficient.

7. **INSTRUCTION: Presumption of Innocence: Reasonable Doubt.** An instruction on presumption of innocence and reasonable doubt *held* not improper.

8. **CONTINUANCE: Absent Witness.** Where there is no probability that, if the absent witness had appeared and testified as indicated in the affidavit, it would have had any effect on the result of the trial, the trial court commits no error in overruling an application for a continuance based on the absence of such witness.

Appeal from Buchanan Criminal Court.—*Hon. B. J. Casteel,* Judge.

AFFIRMED.

*Houston & Buckner* and *Jno. C. Moore* for appellant.

It was error to overrule the application of defendant for a continuance because of the absence of material witnesses and to force the defendant to trial on the same day that the information was filed against him. Miller v. U. S., 8 Okla. 315; Mopes v. State, 14 Tex. App. 129; State v. Hagan, 22 Kan. 490; Salsbury v. Com., 79 Ky. 425; State v. Lewis, 1 Bay (S. C.) 1; State v. Fox, 79 Mo. 109; State v. Painter, 40 Iowa 298.

*Herbert S. Hadley,* Attorney-General, and *Rush C. Lake,* Assistant Attorney-General, for the State.

The question of granting a continuance is lodged in the sound discretion of the trial court, and unless there is a clear abuse of that discretion, this court will not interfere. State v. Lewis, 181 Mo. 255.

GANTT, J.—This is a prosecution begun by the prosecuting attorney of Buchanan county, Missouri, by filing an information in the criminal court of that county, charging that defendant unlawfully, feloniously, on purpose, and of his malice aforethought, made an assault and shot and struck William P. Gibson, with a certain revolver loaded with gunpowder and leaden balls, on the 14th day of May, 1904.

The defendant was duly arraigned and entered his plea of not guilty. On the 4th day of August, 1904, he made an application for a continuance, which was heard and overruled, and thereupon he made an application for a change of venue, which was denied on the ground that due notice had not been given to the prosecuting attorney. A jury was impaneled to try the case, and after hearing the evidence, found the defendant guilty, and assessed his punishment at ten years in the penitentiary. In due time the defendant filed his motions for new trial and in arrest of judgment, which were considered by the court and overruled. On the 18th day of August, the defendant was sentenced in accordance with the verdict, from which sentence and judgment, the defendant has appealed to this court. There is practically no controversy as to the evidence in the case.

The testimony discloses the following facts: On the 14th day of May, 1904, in the afternoon, a man by the name of Wilkerson called upon Gibson, who was a police sergeant in the city of St. Joseph, to come to a livery barn with him and see whether or not a team in the barn, and which had been placed there by the defendant, answered the description of a team which had advertised as having been stolen at Savannah, Missouri, and of which the St. Joseph police officers had a description. In company with Wilkerson, the prosecuting witness, Gibson, went to a saloon in the neighborhood of the barn and asked the defendant, Temple, to show him the team, explaining to Temple that he, Gibson, was a police officer. Temple accompanied them

to the barn, and on the way, at Wilkerson's request, officer Grable joined them. Defendant Temple stepped into the stall of one of the horses and was engaged in untying it, when Gibson remarked, "Why this is not the team," and Temple, who was slow in backing out the horse, was addressed by Wilkerson, who said, "It takes you a long time to untie those horses; why don't you get those horses out; it takes you a hell of a long time to untie those horses; why don't you bring them out of there." At about that time Wilkerson saw the defendant draw his "gun" (which was a 44 calibre self-acting revolver) and throwing his arm over the neck of the horse, which was between the defendant and Gibson, Temple fired the revolver, the ball striking Gibson in the face, and so close was the revolver to Gibson that the powder burned his face.

The defendant then turned his revolver upon officer Grable, and the officer states in response to the question (p. 12, transcript of the testimony):

"Q. What did you do? A. Well, just as soon as he shot Gibson, he throwed the gun right in my face, and I was standing like this, with my hands in my pockets, and just as he drawed it in my face I clinched it. Q. Is this the gun that was used there? A. Yes, sir, this is the gun. Now, as he drawed it I caught it like that; I grabbed it just in that shape and clinched it with my thumb behind the hammer, and then holding it in this way, and then several times he would wrench it around and take hold with both hands and try to pull it off, but I clinched it here, and the old Nick himself could not pull it off."

With the help of bystanders, Temple was finally subdued. The testimony shows that no charge was made against Temple. The request was made that he produce for inspection the horses he had for sale, and while in the pretended act of complying with Gibson's request, he opened fire, shot Gibson and attempted to

shoot officer Grable. No testimony was offered by the defense.

The facts in the case upon which this appeal is prosecuted will be noted in connection with the several propositions advanced by the counsel for the defendant to secure a reversal of the judgment.

I. The information is assailed because it was verified solely on the information and belief of the prosecuting attorney, and does not purport to be based upon his actual knowledge. Our statute, sections 2477 and 2479, Revised Statutes 1899, permits the verification of an information by the prosecuting attorney upon his information and belief, and the cases cited, from other jurisdictions, are not controlling authority on this point. Moreover, the information in this case was not challenged by motion to quash, and the defendant waived this point by not making his objection to the informaon that ground, prior to the trial of the case. [State v. Brown, 181 Mo. 192, l. c. 226.]

II. It is objected that the record does not affirmatively show that the jury was sworn to try the case. This exception is based upon a misapprehension of what the record discloses. The entry of the record on this point is as follows: after naming the twelve jurors by name, it proceeds, "twelve good, lawful men of the body of the county, who are duly tried, impaneled and sworn to try the cause," etc. This form was held sufficient in State v. Schoenwald, 31 Mo. 159.

In the case just cited, Judge SCOTT, speaking for this court, said: "The books state the form of the oath to be administered in criminal trials. But it does not appear that the oath as administered should be entered on record. . . . . And as the approved forms of entries in capital cases do not require that the oath should be formally entered of record, we consider that on the record as made out, there is no error." This assignment of error must be considered untenable.

194 Sup—16

III. There is no merit in the point made that the record does not show the defendant present during the trial and at the time the verdict was received. The whole trial occurred on the 4th day of August, 1904, the record of that day's proceedings shows that the defendant was present and arraigned in open court and entered his plea of not guilty, and that his motions for continuance and change of venue were taken up and overruled, and that the prosecuting attorney and the defendant made their challenges, and thereupon the jury as selected were duly sworn, and on the same day the jury returned their verdict in the cause. It is unquestionably true that a defendant in a felony case must be present at every stage of the trial. But by section 2610, Revised Statutes 1899, it is provided "that when the record in the appellate court shows that the defendant was present at the commencement or any other stage of the trial, it shall be presumed, in the absence of all evidence in the record to the contrary, that he was present during the whole trial." Section 2610, supra, was designed and has the effect to change the burden of proof as to the presence of the defendant at every stage of the trial. The decisions of this court prior to its enactment and the adjudications of the various other courts in this country, in the absence of such a statute, cannot control. The facts in this record indicate the wisdom of the statute. It will be observed that the defendant not only does not claim that as a matter of fact he was absent when the jury returned their verdict, but in his own affidavit in support of his motions for new trial, he states that at the convening of the afternoon session on the 4th day of August, 1904, he was brought into the court room for further proceedings in the custody of two officers who were guarding him. It was the purpose of the statute to avoid granting of new trials and reversal of judgments in criminal cases simply because by the inattention of the clerk of the court, in writing the record of criminal cases, the

presence of the defendant at each stage of the trial was not noted on the record. The statute makes it the imperative duty of the several judges to superintend the making up of the records in their courts, and the prosecuting attorneys should see to it that the entries in criminal proceedings should recite the presence of the defendant at the various stages of the trial and avoid appeals upon such grounds as this. But because this was so often neglected, and judgments had been reversed by this court for the failure of the record to affirmatively show the presence of the defendant, this statute was enacted.

As nothing to the contrary appears in this record, and as already seen, the record does show the defendant was present at the impaneling of the jury, the presumption must be indulged that he was present when the verdict was received. [State v. Barrington, not yet reported.]

IV. It is assigned as error that the court erred in permitting the defendant to be manacled and shackled in the presence of the jury, and for this reason a new trial should be granted. The facts upon which this assignment of error is predicated appear from the affidavit filed by the defendant and others in his behalf, as well as those filed by the sheriff and his deputies, and are as follows: Upon the convening of the court at the afternoon session on the day on which defendant was tried, the defendant was brought to the court room, with handcuffs on him, which were removed by the officer before the cause was resumed, and at the noon hour, when the recess for dinner was taken, the officers placed the handcuffs upon him to remove him to the jail, and this was done in the presence of at least some of the jurors who were trying the case. As a reason for securing the prisoner in this manner, the sheriff makes affidavit that at the time and prior to that date he had received information to the effect that the defendant was a desperate criminal; that he had broken jail at Pond

Creek, Oklahoma, on two different occasions when confined for crimes; that on one of these occasions, the defendant, as the sheriff was informed, when in the court room, drew two revolvers, which had been secretly supplied him, and covered the officers with the same, backed out of the court room, mounted a horse in waiting outside and made his escape; that the defendant had told one of the jailors that he had once broken jail by the use of a false pistol, which he had made out of tin, and by means of which he intimidated his jailor and made his escape; that these reports having reached the sheriff, caused him to caution his deputies to be very careful with defendant; that he, the sheriff, had been present often during the trial of the defendant, and the defendant had never been handcuffed during the trial. The deputy sheriff, Frank Johnson, made affidavit that he had charge of the defendant; that in taking prisoners to and from the jail to the court room, it was customary to handcuff all male prisoners; that the jail is separate and apart from the court house, and is reached by traversing some fifty feet of Fifth street, one of the main thoroughfares of the city of St. Joseph; and that it is necessary to pass through dark, crowded corridors of the court house and up a stairway, in all covering a distance of over 200 feet; as in all other cases, the defendant was freed from his handcuffs when seated in the court room, and the handcuffs replaced when the defendant was taken and removed from the court room after adjournment of the court; that defendant was reported to be a dangerous criminal, and the sheriff was advised that the defendant had made his escape from the court room while on trial at Pond Creek, Oklahoma; that at the said August term, the defendant was on trial for an assault with an intent to kill two public officers of the city, and was also held on the charge of stealing two horses; that the defendant was a magnificent specimen of phy-

sical manhood, of vicious temperament, and on trial for a vicious assault; that in spite of his knowledge of these facts affiant endeavored in every way possible to handle and safely keep the defendant in an unobtrusive way and to do nothing indicative of any unusual care or watchfulness on affiant's part, and that there was nothing out of the ordinary in guarding a male prisoner. In State v. Kring, 64 Mo. 591, Judge NAPTON, speaking for this court, in reviewing the judgment of the St. Louis Court of Appeals in the same case, 1 Mo. App. 438, said: "The English authorities to sustain the conclusion of the Court of Appeals are referred to in the opinion, and also in the brief for counsel for the defendant, to which may be added, People v. Harrington, 42 Cal. 165. From all these cases, it seems very clear, that without some good reason, authorizing the criminal court to depart from the general practice in England and in this country, the shackles of the prisoner, when brought before the jury for trial, should be removed. We have no doubt of the power of the criminal court, at the commencement, or during the progress of the trial, to make such orders as may be necessary to secure a quiet and safe one, but the facts stated by the court in this case, as shown by the record, that the prisoner had assaulted a person in court, about three months before the term at which he was tried, would hardly authorize the court to assume that, on his trial for life, he would be guilty of similar outrages. There must be some reason, based on the conduct of the prisoner, at the time of the trial, to authorize so important a right to be forfeited. When the court allows a prisoner to be brought before a jury with his hands chained in irons, and refuses, on his application, or that of his counsel, to order their removal, the jury must necessarily conceive a prejudice against the accused, as being in the opinion of the judge a dangerous man, and one not to be trusted, even under the surveillance of the officers. Besides, the condition of the prisoner in

shackles may, to some extent, deprive him of the free and calm use of all of his faculties.'' In the Kring case, the facts upon which the foregoing information was predicated were these: ''The defendant was brought to the bar of the court, and, having announced through his counsel his readiness for trial, the court thereupon ordered the trial to proceed. Defendant being ironed with handcuffs, or manacles, upon his hands and wrists, his counsel then and there made a motion to the court to have the same removed, which the court refused to do, overruling the motion, the court stating that an assault made by the accused on J. G. Broemser, husband of the deceased, in open court, when the accused was last here, was the reason why.'' Judge BAKEWELL, for the Court of Appeals, reviewed the common law on this subject, and said: ''In the case of Layer, 16 How. St. Tr. 94, who was tried for high treason in 1722, a distinction was taken, and it was held that the prisoner might be brought ironed, to the bar, for arraignment, but that his shackles must be stricken off at the trial. 'My Lord,' said the prisoner, in the report of that case, 'I hope I shall have these chains taken off, that I may have the free use of that reason and understanding which God hath given me,' to which the Lord Chief Justice replies: 'As to the chains you complain of, it must be left to those to whom the custody of you is committed to take care that you may not make your escape; when you come to your trial, then your chains may be taken off.' To which counsel for the prisoner said: 'Your Lordship hath limited it as an indulgence extended to him when he comes to his trial that his irons should be taken off; but I humbly insist upon it that *by law* he ought not to be called upon even to plead until his fetters are off. My Lord Coke (3 Inst. 35) is clearly of that opinion in his Pleas of the Crown; and it is admitted on all hands that, when he comes to be tried, his shackles must be off; and upon debate, it was so determined in Cranburne's case, 13

How. St. Tr. 222.  The only reason for putting of irons at all on a prisoner, is to keep him in safe custody; and the reason why they are taken off in the course of proceedings against him in a court of justice seems to be that his mind should not be disturbed by any uneasiness his body or limb should be under.' The Lord Chief Justice said: 'No doubt, when he comes upon his trial, the authority is that he is not to be *in vinculis* during his trial, but should be so far free that he should have the use of his reason and all advantages to clear his innocence.  Here he is only called upon to plead by advice of his counsel; he is not to be tried now; when he comes to be tried, if he makes that complaint, the court will take care that he shall be in a condition proper to make his defense; but when he is only called on to plead, and his counsel by him to advise him what to plead, why are his chains to be taken off this minute, and to be put on again the next?' "  In Waite's Case, 1 Leach 43, when the defendant had pleaded not guilty, and was put upon his trial, the court ordered his fetters to be knocked off.  Giving full effect to the doctrine announced in Kring's case, and the common law authorities, it is obvious that, accepting the defendant's own account, he has not brought himself into a like situation with that described in either of those cases.  Adopting his own version, the shackles were removed from him as soon as he was brought within the bar of the court.  In State v. Craft, 164 Mo. 651, it was said by BURGESS, J., for this court: "At common law when a prisoner was brought into the court for trial, upon his plea of not guilty to indictment for a criminal offense, he was entitled to make his appearance free from all shackles or bonds (State v. Kring, 64 Mo. 591; State v. Kring, 1 Mo. App. 438; People v. Harrington, 42 Cal. 165); and, to justify shackles on the prisoner during the trial, there must exist some good reason, bottomed upon his conduct at the time of the trial; other-

wise, in this country, when the prisoner is brought before the jury for trial the shackles should be removed." In State v. Temple, *ante,* p. 228, this same error is urged, and speaking for this court, Judge BURGESS said: "It has been held by this court, following the common law rule, that when a prisoner is brought into court for trial, upon his plea of not guilty to an indictment for a criminal offense, he is entitled to make his appearance free from all shackles or bonds; and to justify the keeping of shackles upon the prisoner during the trial, there must arise, during the trial, some good reason therefor based upon the conduct of the prisoner, in the absence of which such action would be improper and would deprive the defendant of a substantial legal right, to his prejudice. But there is no pretense that the prisoner in this case was shackled during the trial. On the contrary, it clearly appears that he was not in any way deprived of the free and calm use of all of his faculties. We do not, however, intend to be understood as holding that any explanation was due from the officers in charge of the defendant for placing shackles upon him taking him to and from the court house during the trial." All of which is applicable to the facts of this case and conclusively establish that the defendant has no ground of complaint on account of the action of the officer in handcuffing him while bringing him to, and taking him from, the court. [State v. Duncan, 116 Mo. 308; State v. Rudolph, 187 Mo. 1. c. 89.]

V. It is next insisted that the information is bad. The information was drawn to charge an offense under section 1846, Revised Statutes 1899. It charges that the defendant unlawfully, feloniously, on purpose and of his malice aforethought, in and upon one William P. Gibson, did make an assault, and did then and there feloniously, on purpose and of his malice aforethought, shoot and strike him the said William P. Gibson, in and upon the face and head with a certain revolving pistol then and there loaded with leaden balls, which he, the said

defendant, then and there in his hand had and held, with intent then and there him, the said Gibson, on purpose and of his malice aforethought, feloniously, to kill and murder, etc. The information charges every element of the offense denounced in section 1846, and is not obnoxious to the objection made by defendant, and is in accordance with the precedents of this court since the case of State v. Comfort, 5 Mo. 357; State v. Chandler, 24 Mo. 371; State v. Jones, 86 Mo. 623; State v. Wood, 124 Mo. 412; State v. Hendrickson, 165 Mo. 262.

VI. The first instruction given by the court of its own motion is challenged. That instruction is in these words: "The defendant is presumed to be innocent of the offense with which he stands charged, and this presumption continues throughout the case until over-come by evidence showing him guilty beyond a reason-able doubt; and if you have a reasonable doubt of the guilt of the defendant, you must acquit him, but such a doubt to justify an acquittal must be a substantial doubt founded on the evidence, and not a mere possi-bility of the defendant's innocence." Defendant as-sails this instruction on the authority of State v. Blue, 136 Mo. 41, but a reading of the instruction in that case will show that it differs materially from the instruction in this case. In the Blue case, the instruction required "the doubt to be *consistent with the evidence*." There is no such requirement in this case. The objection is not well taken; it is substantially the same as the instruction on reasonable doubt approved by this court in State v. Blunt, 91 Mo. 503; State v. Sacre, 141 Mo. 64; State v. Duncan, 142 Mo. 456; State v. Adair, 160 Mo. 391. We must be allowed again to commend to the trial courts the instruction in State v. Nueslein, 25 Mo. 111, which has always received the approval of this court.

VII. The objection urged against the second in-struction is that it eliminates the necessity of proof that

the criminal act was done ''purposely'' and ''with malice aforethought.'' A reference to the instruction itself will show that the jury was required to find that the defendant ''on purpose, wilfully and with malice aforethought, made an assault on the witness Gibson and shot him in the face and head, with the intention of killing him.''

The court correctly defined ''willfully,'' ''malice,'' and ''malice aforethought,''and the instruction must be held sufficient.

VIII. The last assignment of error is that the court erred in overruling the defendant's application for continuance. The rule in this State is firmly established that the granting of a continuance is a matter resting largely in the trial court's discretion, and nothing short of an abuse of such discretion will justify an interference by this court. The affidavit assigned as a reason why the defendant could not safely proceed to trial that one Charles Drake, who was a competent, material witness for defendant, was absent. It is alleged ''that the said witness resides in Lyle, Grant county, Oklahoma, and that he expected to prove that Charles Drake was present with the defendant on the day and date named in the information, and at the time of the assault complained of in the information, and that he believes that he can prove by said witness that defendant was assaulted by several police officers without provocation or just cause; and that by reason of said assault was compelled to and did retreat as far as he could go, whereupon said officers struck and beat defendant with heavy clubs in and about the head, and that thereupon defendant, in defense of his own life, shot and wounded one of said officers; that said witness disappeared on the day and date named in the information and immediately after the assault therein complained of, and that defendant used due and proper diligence to locate said witness, but had been unable to do so until the present time, but

he is now informed that said witness is now residing and may be found in Lyle, Grant county, Oklahoma.''

So far as mere matter of form is concerned, the affidavit substantially complies with the requirements of the statute, section 2600, Revised Statutes 1899, with the exception that it does not state what diligence, if any, had been used by the defendant to locate the alleged absent witness, Charles Drake. It is not averred that defendant had received a letter from the said witness, or any other person living at Lyle, Oklahoma, that the said Drake was now living there, nor was the court informed as to the nature of the information that justified the defendant in believing that said Drake could be found in Lyle, Grant county, Oklahoma. In State v. Worrell, 25 Mo. 1. c. 256, it was said: ''Even if the circuit court may have seemingly exercised its discretion without proper caution at first (which we do not pretend to say was the case here), yet when the whole case is presented before this court, and the absent witness, from what is alleged in the affidavit, may be supposed not to be able to change the result, if produced and present, and indeed ought not to change the result, there can be no injury done to the defendant by ruling him to trial; and in such cases this court will not reverse.'' In State v. Kindred, 148 Mo. 1. c. 281, in passing upon the question of whether error had been committed in denying a continuance, it was said: ''In the meantime, he alleges, the witness on or about the first of May left Mercer county, and was then in Oklahoma Territory. The affidavit does not disclose the address of the witness in Oklahoma. It does not appear that he has become a resident of said Territory nor that he went there with a view to a permanent residence. For aught that appears to the contrary the witness might have had no intention of settling in said Territory. Being without the jurisdiction of our courts he might feel under no obligation to tarry there until a commission should issue, and notices be served. It was entirely

problematical where or when this witness could be found." And it was said: "Looking now over the whole evidence, that of the defendant and the other eye-witnesses, we can see there is not the least probability that the testimony of the absent witness, if given as indicated, would have affected the result, nor would it have changed the verdict, and no injury resulted by refusing the continuance." So we can now look at the whole evidence in this case, and the affidavit for continuance and say there is not the slightest probability that, if the said witness Drake had appeared, and had testified as indicated in this affidavit, or if his deposition had been taken in Oklahoma to that effect, it would have had the slightest effect on the result of the trial. It is significant that although defendant was represented by able and industrious counsel, no effort was made to disclose on the cross-examination of the State's witnesses that this man Drake was present at the livery stable when the defendant shot Sergeant Gibson, nor was the slightest attempt made to show that Gibson, or officer Grable, or any one else began the difficulty by assaulting the defendant, or beating him over the head with clubs so that he was compelled to shoot Gibson in self-defense. In the face of the testimony of the officers, Gibson and Grable, and of the witnesses Wilkerson, Luchsinger and Wakefield, all residents of Buchanan county, there is not the slightest probability that the jury would have accepted the unsupported testimony of the peripatetic witness Drake, and found that the defendant shot the officer in self-defense.

There was no abuse of discretion in refusing to delay a trial of so much importance with no better showing of diligence than is disclosed on this record. The evidence in this case shows that a deadly assault was made upon an officer of the law without the slightest provocation. The defendant has had a fair and impartial trial, and should congratulate himself that the

victim of his assault did not die from the wounds he inflicted upon him.

The judgment of the criminal court of Buchanan county is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.