**STATE of Missouri, Respondents,**

v.

**Jeffrey Lee BORMAN, Appellant.**

No. 9892.

Missouri Court of Appeals,
Springfield District.

Oct. 8, 1975.

Rehearing Denied Oct. 31, 1975.

Gene Gulinson, Salem, for appellant.

John C. Danforth, Atty. Gen., Louren R. Wood, Asst. Atty. Gen., Jefferson City, for respondents.

Before STONE, P. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

Appellant Jeffrey Lee Borman appeals from a conviction and sentence of two years for breaking jail and escaping before conviction. § 557.390 RSMo 1969, V.A.M.S. The punishment, fixed by the jury, was the statutory maximum.

Conceding the sufficiency of the evidence to support the verdict, appellant contends that the trial court erred in permitting, over objection, appellant to appear before the jury in handcuffs and leg irons. The contention is sound.

The date of the offense was June 9, 1971, and the trial was held on October 15, 1974. In April, 1971, appellant was jailed on two charges of first degree murder, those charges having arisen in Howell County where the instant offense and trial occurred. On August 20, 1971, appellant entered pleas of guilty to the two murder charges and on each received a sentence of 45 years, the two sentences to run consecutively. The instant two-year sentence runs consecutively with the murder sentences.

In its appellate brief the state agrees with appellant's factual description of the courtroom situation to be discussed.

At the beginning of the trial, which lasted one day, appellant was brought into the courtroom wearing leg irons, so chained that his feet could not be more than 18 inches apart. On each wrist he had a handcuff and each handcuff was connected to a chain around his waist, preventing him "from raising his hands more than several inches above his waist."

Before the jury panel was brought in, appellant's attorney objected to the presence of six armed officers in the courtroom (the officers included the sheriff, deputy sheriffs, a policeman, and at least one member of the highway patrol). The attorney requested that the handcuffs and shackles be removed and that the officers be seated "somewhere in the seating areas in the courtroom and not at close proximity to the jury or the defendant." This request was denied.

Throughout the trial the jury could see that appellant was shackled and handcuffed. During the trial two deputy sheriffs and two police officers sat two or three feet directly behind the appellant, who sat at the counsel table; at times a trooper sat about three feet from the jury box and close to the witness stand. In addition, at least one officer was stationed at each door in the courtroom, although the number of doors is not shown. All officers, and there were at least seven of them, were visibly armed.

Following the noon recess, appellant's attorney renewed his request with respect to the seating of the officers and the restraints. He also moved for a mistrial. In denying the request and the motion, the trial court noted that at the time of the trial another charge was pending against appellant in another county. That charge involved an assault upon a sheriff.[1]

Fairness to the trial judge requires this court to state that after the verdict had been returned and accepted, the court informed the jury of the reasons for the physical restraints.[2]

---

1. Though the record is not clear, it is a reasonable inference that the alleged assault upon the sheriff arose out of the same episode from which the offense on trial arose.

2. After the verdict had been accepted the court said: "It's my responsibility in the court room to approve or disapprove of the

manner in which a person appears in court and Mr. Borman has appeared in this court in accordance with my wishes. I didn't want anything to happen to anyone in the court room and as the record will show, Mr. Borman has a considerable sentence facing him and I did not want to place him in a

The right of a defendant in a criminal case to be free of physical restraints while attending his own trial is not absolute. Under "exceptional circumstances," *State v. Boone*, 355 Mo. 550, 196 S.W.2d 794, 796[3] (1946), or for "good reason," *State v. Kring*, 64 Mo. 591, 592 (1877), at least if the good reason is bottomed on the accused's misconduct during the trial,[3] *State v. Kring, supra*, 64 Mo. at 593; *State v. Craft*, 164 Mo. 631, 65 S.W. 280, 284 (1901); *State v. Temple*, 194 Mo. 228, 92 S.W. 494, 496 (1906); *State v. Temple*, 194 Mo. 237, 92 S.W. 869, 872 (1906); *State v. Boyd*, 256 S.W.2d 765, 766[4] (Mo. banc 1953); *State v. McGinnis*, 441 S.W.2d 715, 717[1] (Mo.1969); *Bibbs v. State*, 504 S.W.2d 319, 320[1] (Mo. App.1973); *State v. Robinson*, 507 S.W.2d 61, 63 (Mo.App.1974), the trial court in the exercise of sound discretion may require the accused to be physically restrained in a reasonable manner, and even though the fact and method of restraint are visible to the jury.

It is the responsibility of the trial judge to maintain "dignity, order and decorum" in the courtroom, *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353, 359 and "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Illinois v. Allen*, supra, 397 U.S. at 343, 90 S.Ct. at 1061.

The trial judge is vested with a considerable, but not unlimited, discretion in determining the propriety of permitting physical restraints after weighing the relevant factors, which include the presence or absence of disruptive conduct on the part of the defendant prior to or during the trial, the presence or absence of threats of such misconduct, the trial atmosphere, the likelihood of an attempt to escape, the age and physical attributes of the accused, the nature of the offense on trial, the size and mood of the audience and the adequacy of alternative remedies. It has rightly been said that the propriety of physical restraints depends upon the particular facts of each case. *State v. Robinson, supra*, 507 S.W.2d at 62.

The appellate courts of this state have shown a strong reluctance to interfere with the decision of the trial judge on the need for physical restraints. In at least twelve cases[4] where the matter has been raised,

position where a temptation might get the best of him. And I was not concerned that anything would happen to anybody here but I would rather be overly cautious for all concerned and I was thinking of him as much as anybody else. I didn't want him to get involved any more and for that reason I requested the officers here today and Mr. Sheriff, I appreciate your complying with my request and to the officers who are here, I appreciate your presence here.

"As I say it is my responsibility entirely and I accept it and I do not ask anybody to share it and Mr. Borman, I hope that in some manner you will understand my cautiousness. And if I have been in error, why your lawyer, Mr. Gulinson will bring it to the attention of the proper appellate court and if they think my concern has been improper, they will reverse this trial and remand it for another trial. But that is my reasoning and I didn't want anybody here to be alarmed nor did I want Mr. Borman to find himself with more charges and thus far it's worked out like that. Maybe we didn't need these guards, I don't know but I want-

ed to remove any temptation and thus far it's worked out like that.

"So I think you're entitled to know my reason and it's my full responsibility which I accept."

3. But in *Loux v. United States*, 389 F.2d 911, 919 (9th Cir. 1968) it is said: ". . . To require a dangerous act at trial before shackling the prisoner would seriously impair the court's security. The purported requirement of bad conduct at trial stems from two old Missouri cases, *State v. Kring*, 1877, 64 Mo. 591 and *State v. Temple*, 1906, 194 Mo. 237, 92 S.W. 869 . . . Modern cases do not require that the judge's decision be based on conduct of the prisoner at trial. . . ."

4. *State v. Craft*, 164 Mo. 631, 65 S.W. 280 (1901); *State v. Temple*, 194 Mo. 228, 92 S.W. 494 (1906) "Temple I"; *State v. Temple*, 194 Mo. 237, 92 S.W. 869 (1906) "Temple II"; *State v. McKeever*, 339 Mo. 1066, 101 S.W.2d 22, 30 (1936); *State v. Boone*,

complaints with respect to physical restraints have been held invalid. In three cases[5] the trial court has been convicted of prejudicial error in having permitted some degree of physical restraint at some stage of the proceedings.

The right, limited though it be, of a defendant to be free of physical restraints is based, at least in part, upon the following considerations: "the jury must necessarily conceive a prejudice against the accused, he being in the opinion of the judge a dangerous man, and one not to be trusted, even under the surveillance of the officers," *State v. Kring*, 64 Mo. 591, 593 (1877); "the condition of the prisoner in shackles may, to some extent, deprive him of the free and calm use of all his faculties," Kring, supra, at 593; "shackles may materially interfere with the defendant's ability to consult orally or communicate in writing with defense counsel," *Kennedy v. Cardwell*, 487 F.2d 101, 106 (6th Cir. 1973); shackling detracts from "the very dignity and decorum of the judicial proceedings that the judge is seeking to uphold," *Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353, 359 (1970).

■ The granting of a mistrial is a drastic remedy to be exercised only in those circumstances in which no action short of a mistrial would remove the prejudice claimed. *State v. Johnson*, 504 S.W.2d 23, 29[7] (Mo.1973). The trial court observes first hand what occurs in his courtroom and has considerable discretion in deciding whether a mistrial is warranted. Only if an appellate court finds such discretion to have been abused should a case be reversed for failure to declare a mistrial. *State v. Beal*, 470 S.W.2d 509, 516[9] (Mo. banc 1971).

■ This court has reached the reluctant but sure conclusion that here there was an abuse of discretion. The following factors have been considered and their combination leads to that result:

1. During the trial, in the presence and vision of the jury, appellant was kept in handcuffs and leg irons.

2. Six and sometimes seven officers, all visibly armed, were present during the trial and four of them were seated behind appellant and within two or three feet of him.

3. Appellant was guilty of no disruptive conduct during the trial, nor had he threatened such.[6]

4. Appellant was being tried for breaking jail and escaping.

355 Mo. 550, 196 S.W.2d 794, 796 (1946); *State v. Boyd*, 256 S.W.2d 765, 766 (Mo. banc 1953); *State v. McGinnis*, 441 S.W.2d 715, 717 (Mo.1969); *State v. Richards*, 467 S.W.2d 33, 38 (Mo.1971); *State v. Johnson*, 499 S.W.2d 371, 374 (Mo.1973); *Bibbs v. State*, 504 S.W.2d 319, 320[1, 2] (Mo.App. 1973); *State v. Warriner*, 506 S.W.2d 103, 104[1] (Mo.App.1974); *State v. Neely*, 524 S.W.2d 886 (Mo.App.1975).

But in the following cases the defendant was not physically restrained, in the presence of the jury, during testimony: Craft, Temple I, Temple II, McKeever, Boone, Warriner, Neely.

In the following cases the defendant was guilty of disruptive conduct before the trial: Temple I, Temple II, Boyd, Bibbs. Also, in Boyd, there was no objection made to handcuffs and Boyd's attorney "actively participated" in deciding the method of restraint.

In the following cases the defendant was guilty of disruptive conduct at the trial: McGinnis, Richards, Johnson, Bibbs.

All the cases in this footnote involved handcuffs. In Temple II the defendant was "manacled and shackled" and in Boyd the defendant was "handcuffed and manacled."

5. *State v. Kring*, 1 Mo.App. 438 (1876) Aff. 64 Mo. 591 (1877) (defendant was handcuffed before the jury during the trial; he had been guilty of disruptive conduct before the trial); *State v. Rice*, 347 Mo. 812, 149 S.W.2d 347 (1941) (two defendants shackled together during impaneling of jury); *State v. Robinson*, 507 S.W.2d 61 (Mo.App.1974) (defendant handcuffed to chair, in view of the jury, during portion of trial after creating "one mild incident" in jury's presence).

6. Although the argument (as distinguished from the statement of facts) portion of the state's brief claims that in January, 1974, the defendant had threatened to escape at the trial, nothing in the transcript supports the assertion. Moreover, stationing *four* armed officers so close to the defendant, physically restrained as he was, was not warranted.

5. Outside the presence of the jury, an evidentiary hearing[7] was held and a careful record was made concerning the restraints and the surrounding circumstances.

6. Appellant's able counsel had repeatedly requested relief from the situation.

The presence of so many armed officers, located as they were, rendered unnecessary the physical restraints. If the physical restraints were justified, they rendered unnecessary the presence of so many officers located so close to appellant. The treatment was too much for the suspected malady.

The judgment is reversed and the cause remanded.

All concur.

---

7. "While the cases have laid down no definite rule as to the exact form for an evidentiary hearing to determine whether physical restraint is necessary, we think that it is preferable, except in cases where the trial process is disrupted in the court's presence, that a formal hearing should be conducted with sworn testimony. In this way factual disputes may be resolved and a meaningful record preserved for an appeal or for collateral relief." *Kennedy v. Cardwell*, 487 F.2d 101, 110[7] (6th Cir. 1973).