THE PEOPLE OF THE STATE OF NEW YORK, Respondent *v.* ANTHONY MENDOLA, Appellant.

Fourth Department, May 2, 1956.

*Anthony Mendola,* appellant in person.

*Harry L. Rosenthal, District Attorney (John C. Little, Jr.,* of counsel), for respondent.

WILLIAMS, J. This case grows out of a prison break at the Monroe County Penitentiary. The appellant, one of the inmates, was indicted for conspiracy, escape, and various felonies. Two trials were had on the several counts of the indictment resulting in two separate verdicts of guilt and culminating in one judgment of conviction, from which the defendant appeals. After reviewing the records, we are satisfied that the evidence fully supports the conviction, and if the trials had been free from serious and prejudicial error, we would affirm without hesitation. The most important question, of course, is whether the cases were fairly tried (*People* v. *Nuzzo,* 294 N. Y. 227, 234).

Throughout both trials, appellant was handcuffed to a deputy sheriff. Upon the first trial, his attorney moved that the defendant be released from the manacles. The motion was denied by the court without comment and no evidence was taken regarding the necessity of such an extraordinary practice. During the second trial, the motion for removal of the manacles was again denied, upon the District Attorney's statement that he was informed that the Sheriff had directed that the defendant be manacled to a deputy. In denying the motion, the Trial Judge remarked that he was unwilling "to interfere with the sheriff's superior knowledge, apparently, of the conduct of the defendant."

The problem presented has not been considered in any reported case in this State. We begin our consideration with section 10 of the Code of Criminal Procedure, which guarantees that a defendant cannot "be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge." This statute is declaratory of the common law (Report of the Commissioners on Practice and Pleadings, 1850, p. 10), which we believe has been fairly stated as follows: "It is a common-law right of a person being tried for the commission of a crime to be free from all manner of shackles or bonds, whether of hands or feet, when in court in the presence of the jury, unless in exceptional cases where there is evident danger of his escape or in order to protect others from an attack by the prisoner. Whether that ought to be done is in the discretion of the court, based upon reasonable grounds for apprehension. But, if this right of the accused is violated, it may be ground for the reversal of a judgment of conviction." (*Marion* v. *Commonwealth*, 269 Ky. 729, 733.)

The common-law rule against the shackling of prisoners is an old one, enforced in the English courts as early as 1660 and frequently thereafter (5 How. St. Tr. 979; 13 How. St. Tr. 222; 1 Leach's Crown Cases, 28, 36; 2 Hale's Pleas of the Crown 219; 4 Blackstone's Commentaries 322). When it is considered that the accused at that time was not permitted the services of counsel, nor allowed to offer sworn testimony in his behalf (2 Wigmore on Evidence [3d ed.], §§ 575, 579), the rule forbidding the manacling of defendants may be explained only on the ground that it was considered absolutely fundamental to even a crude system of justice.

In this country, courts and judges early condemned the practice of conducting a criminal trial with the defendant in irons (*State* v. *Kring,* 1 Mo. App. 438, affd. 64 Mo. 591; *State* v. *Smith,* 11 Ore. 205; *State* v. *Williams,* 18 Wash. 47). It has been

denounced as "highly improper" and inconsistent with the presumption of innocence (*Shultz* v. *State*, 131 Fla. 757, 758), as "a revolting practice" which "should rarely be done, and never, except in cases where the circumstances show real danger of escape" (*Faire* v. *State*, 58 Ala. 74, 83), and as "obnoxious to the spirit of our laws, and all ideas of justice" (*Gray* v. *State*, 99 Tex. Cr. Rep. 305, 322). There are cases (*De Wolf* v. *State*, 95 Okla. Cr. 287; *People* v. *Kimball*, 5 Cal. 2d 608) in which the trial court, in the exercise of a reasonable discretion, has properly ordered the defendant tried in manacles. But in each of those cases there was some imperative reason for the practice, and the necessity thereof was made to appear upon the record, frequently by the taking of testimony.

The conduct of a criminal trial with the accused in manacles is highly unusual. Before a trial judge permits such a thing to be done, the necessity therefor should be shown clearly. It is seriously prejudicial to the defendant, for the jury might well conclude that he is a dangerous criminal who cannot be trusted, even under the surveillance of guards. The presumption of innocence could thus be impaired by an appearance of guilt. In this case the error was still more serious, for the appellant was chained to a deputy sheriff, so that the discussions and conferences between attorney and client might not have been entirely private, or at least could have been hampered or restricted (cf. *People* v. *Cooper*, 307 N. Y. 253). The record of neither trial discloses any exceptional circumstances which would warrant a departure from the wholesale and salutary general rule against shackling prisoners. If for some reason not apparent in the record, unusual precautions were necessary, they probably could have been taken in a less sensational manner.

On the first trial, the defendant's motion was summarily denied. On the second trial, the court denied the motion on the ground that "apparently" the Sheriff had "superior knowledge" of the conduct of the defendant, with which the court did not wish to "interfere". That was clearly error, for it is the court's responsibility, not the Sheriff's, to decide whether the defendant should be fettered during the trial (*State* v. *McKay*, 63 Nev. 118; *State* v. *Farmer*, 90 Ohio App. 49). While the Sheriff undoubtedly has initial responsibility for the security of prisoners (*People* v. *Burwell*, 44 Cal. 2d 16, certiorari denied 349 U. S. 936), the trial court has the sole responsibility, not shared with the Sheriff, to insure that criminal trials proceed in keeping with accepted standards of fairness. Yet here the court, far from exercising its own discretion, accepted without question the Sheriff's alleged "superior knowledge",

416

without determining whether such knowledge existed, what it was, or whether it would justify the drastic action which was being taken.

We have not overlooked the fact that this case involved an escape, and, of course, the jury knew it. However, in the defendant's participation in the escape there was nothing particularly violent or which, standing alone and without outside considerations, should have caused him to be shackled. We conclude that a trial under the circumstances disclosed by this record offends the common law and section 10 of the Code of Criminal Procedure (*People* v. *Harrington,* 42 Cal. 165).

The judgment of conviction entered upon both verdicts must be reversed and a new trial ordered.

All concur. Present — McCurn, P. J., Vaughan, Kimball, Williams and Bastow, JJ.

Judgment of conviction reversed, on the law, and a new trial granted.