STATE v. CLAUDE BOONE, Appellant.—No. 39987.—196 S. W. (2d) 794.

Division One, October 14, 1946.

*Alex Nimmo* for appellant.

*J. E. Taylor,* Attorney General, and *J. Martin Anderson,* Assistant Attorney General, for respondent.

 BRADLEY, C.—Defendant was charged with forcible rape; verdict of guilty; punishment assessed by the jury at 50 years and one day in the penitentiary. Motion for a new trial was overruled; allocution and sentence followed and defendant appealed.

The prosecuting witness was Mary Mae Maggart, daughter of defendant. She had been married, but was divorced. Defendant and the mother of Mary Mae were also divorced. All the parties resided in Kirksville, Missouri. Mary Mae lived with her mother and defendant had a room over a drug store. About 4 P. M., October 22, 1945, defendant sent word to his daughter that he wanted to see her. She went to his room; he was drinking and according to Mary Mae's evidence he forcibly ravished her. The sufficiency of the evidence is not challenged, hence it will not be necessary to say more of the evidence.

Error is assigned: (1) On permitting the information to be amended, and on refusing a continuance after the amendment; (2) on permitting the names of certain witnesses to be endorsed on the information; (3) on the refusal to dismiss the jury and continue the case because defendant was allowed to remain handcuffed "all forenoon of the first day of the trial" in the presence of the jury; and (4) on permitting the jury to separate.

 The information charged forcible rape under Sec. 4393, R. S. 1939, Mo. R. S. A., Sec. 4393, and also charged under the habitual criminal act, Sec. 4854, R. S. 1939, Mo. R. S. A., Sec. 4854. The amendment struck out the charge under the habitual criminal act. In the brief defendant says: "The objection is made because 'the original information was filed under section 4854, and the information as amended charges the defendant under section 4393, which in reality makes it a new cause in that it may carry a heavier penalty, and the objection is made because the defendant was not notified of the proposed amendment." The information was not filed under Sec. 4854, but charged rape under Sec. 4393, and also alleged such facts as to make defendant liable to additional punishment under the habitual criminal act if convicted of rape.

 The trial court refused the continuance after the amendment on the theory that defendant was "in no wise hurt by the change." Prior to the amendment the information charged that defendant had previously been convicted and served respective terms in the penitentiary for assault with intent to rape and for burglary. The habitual criminal act (Sec. 4854) provides:

"If any person convicted of any offense punishable by imprisonment in the penitentiary, or of any attempt to commit an offense which, if perpetrated, would be punishable by imprisonment in the penitentiary, shall be discharged, either upon pardon or upon compliance with the sentence, and shall subsequently be convicted of any offense committed after such pardon or discharge, he shall be punished

as follows: First, if such subsequent offense be such that, upon a first conviction, the offender would be punishable by imprisonment in the penitentiary for life, or for a term which under the provisions of this law might extend to imprisonment for life, then such person shall be punished by imprisonment in the penitentiary for life . . ."

The punishment for rape prescribed by Sec. 4393 is death or life imprisonment or imprisonment in the penitentiary for any term of years, but not less than two. The habitual criminal act does not create a separate offense, but merely subjects second offenders to greater punishment for crimes they commit. State v. Murphy, 345 Mo. 358, 133 S. W. (2d) 398. It would appear that instead of defendant being hurt by the amendment he was favored by it.

 Leave was granted the State to endorse upon the information as witnesses the names of Eunice Boone, Lula Barger, Mrs. Frank Collins, Mildred Snyder and Martha Estell. The record on this shows as follows:

"Mr. Nimmo (counsel for defendant): I am objecting to the endorsement of the following witnesses by the State on the information: The Court (reading from information): 'Eunice Boone, Lula Barger, Mrs. Frank Collins, Mildred Snyder, and Martha Estell.' Now, as I understand, you were told about the first four several days ago. Mr. Nimmo: I was told by (about) Mildred Snyder a week ago, but only, I think, on Tuesday that Mr. Shirley (prosecuting attorney) mentioned the (other) names. I still don't know what part they have and have no idea, or anything about them. The Court: Well, are you objecting to the endorsement of any of those names, and if so, which ones and why? Mr. Nimmo: I am objecting to all of them because I have had no opportunity to know what their testimony will be in the case and have not been given proper time to make preparations to offset or meet the evidence and testimony that they may give."

Eunice Boone and Mrs. Collins did not testify, and at the time the names were endorsed defendant did not file an affidavit of surprise, or request time to prepare and file such, and made no request or demand that he be given a reasonable time to meet the evidence of these witnesses should such be necessary. And when the three endorsed witnesses who testified were called no such request or demand was made. In such situation defendant is in no position to complain. State v. Derrington (Mo. Sup.), 137 S. W. (2d) 468; State v. Wilson, 321 Mo. 564, 12 S. W. (2d) 445. Defendant, however, had notice that the named witnesses might be called. As to Mildred Snyder, a week's notice is conceded. The trial commenced Thursday morning, February 14, 1946, but the taking of evidence did not begin until 1:30 P. M., and Mr. Nimmo stated that he thought it was Tuesday (the 12th) when the prosecuting attorney mentioned the names of the others. In view of the fact that defendant is in no position to complain, as ruled above, it will not be necessary to rule on the sufficiency of the

554

notice. And we might say that there was nothing of much consequence in the evidence of the three who testified.

As appears, supra, the taking of evidence did not begin until 1:30 P. M. on the day the trial commenced. Mr. Zeigel, special counsel, made the opening statement for the State just before noon. At the conclusion of the statement, Mr. Nimmo stated that he would not then make a statement on behalf of the defendant, and the following occurred:

"Mr. Nimmo: However, I do want to make an objection. I want to make an objection, your Honor, to the fact that the defendant has been kept in handcuffs here from early morning in the presence of the jury, and it, in my opinion, is prejudicial to the defendant in his case, and I am asking that the jury be dismissed and the case continued for that reason. The Court: Overruled (exception). The Court (continuing): The defendant was not in the presence of the jury all morning in handcuffs. Mr. Nimmo: Well, he was present all morning here in handcuffs. The Court: The jury was not sworn at the time, and the defendant, at the time they were sworn, was not in handcuffs. Mr. Nimmo: He was in handcuffs all forenoon here. The Court: He was, when he was brought in the courtroom by the Sheriff, that is true, but he was not in the presence of the jury. Mr. Nimmo: He was up until noon, your Honor, and the jury could see him. The Court: The court could not even see he was in handcuffs while he was sitting there, and I am satisfied the jury could not see he was in handcuffs. The fact that he was, was not called to the attention of the Court either by the defendant or his counsel. Mr. Nimmo: I believe that the proper time is now and I am making my objection and saving my point." The request to dismiss the jury and continue the cause was denied.

Having a defendant shackled during his trial will be permitted only in exceptional circumstances. State v. Kring, 64 Mo. 591; State v. Craft, 164 Mo. 631, 65 S. W. 280; State v. Rudolph, 187 Mo. 67, 85 S. W. 584; State v. Temple, 194 Mo. 228, 92 S. W. 494; State v. Rice, 347 Mo. 812, 149 S. W. (2d) 347. In the Kring case, supra, the court said [64 Mo. l. c. 593]:

"When the court allows a prisoner to be brought before a jury with his hands chained in irons, *and refuses, on his application, or that of his counsel,* to order their removal, the jury must necessarily conceive a prejudice against the accused, as being in the opinion of the judge a dangerous man, and one not to be trusted, even under the surveillance of officers. Besides, the condition of the prisoner in shackles may, to some extent, deprive him of the free and calm use of all his faculties" (italics ours). So it would seem that if defendant was in handcuffs while in the presence of the jury it was his duty to advise the court, and that he did not do. We might say that the Kring case

was overruled in certain respects by Kring v. Missouri, 107 U. S. 221, 2 S. Ct. 443, 27 L. Ed. 506, but not in the respect here considered.

There is nothing here to show that defendant was handcuffed while in the presence of the jury. It is true that counsel in making the objection said that defendant was shackled "up until noon", and that "the jury could see him", but the Court said that he could not see that defendant "was in handcuffs while he was sitting there", and that he was satisfied "the jury could not see he was in handcuffs." There is nothing to show that the jury had any better view of defendant than did the court. In the motion for a new trial defendant set out that portion of ▊ the record, supra, pertaining to defendant being handcuffed, but no evidence was taken on the motion, and the motion would not prove itself. Mickel v. Thompson, 348 Mo. 991, 156 S. W. (2d) 721, l. c. 725, and cases there cited. Again defendant is in no position to complain.

▊ The separation of the jury occurred before the cause was submitted to the jury and not afterwards. When the motion for rehearing was up for ruling the Court said: "The separation (of the jury) took place at the close of the first day of the trial, and was granted because of the inclemency of the weather, more than anything else, and after the Court had discussed the matter with counsel for the State and counsel for the defendant. The point is made in the motion that even though that was agreed to in advance by the defendant, that it was an agreement that he (counsel for defendant) could not make and a waiver that he could not be bound by."

Sec. 4071, R. S. 1939, Mo. R. S. A., Sec. 4071, provides: "With the consent of the prosecuting attorney and the defendant, the court may permit the jury to separate at any adjournment or recess of the court during the trial in all cases of felony, except in capital cases; and in misdemeanors the court may permit such separation of the jury of its own motion, but when the jurors are permitted to separate, after being impaneled as herein provided for, and at each adjournment the court must admonish them that it is their duty not to converse among themselves, nor to suffer others to converse with them or in their hearing on any subject connected with the trial, or to form or express any opinion thereon, until the cause is finally submitted to them."

It will be conceded that defendant was charged with a capital offense and that his case was a capital case. But reversible error is not conclusively presumed merely because of the separation of the jury in such case before submission to the jury. The statute forbids the "separation of the jury during the trial of a capital case, even with the consent of counsel, and if such separation occurs the burden is on the State to prove that no prejudice resulted." State v. King, 342 Mo. 1067, 119 S. W. (2d) 322, l. c. 328. To meet this burden the

State filed and introduced the affidavit of each of the 12 jurors. These affidavits are all to the same effect.

A preliminary paragraph omitted, the affidavit of juror Carlos Jones recites: "Immediately preceding adjournment on the evening of the 14th, the court announced that it had been agreed by both the prosecuting attorney and the attorney for the defendant, that the jury might be permitted to separate and go to our respective homes during the night, but before we were permitted so to do, the court specifically charged each and every juror and admonished each of us not to talk to any one, not even to the members of our immediate families about this case, and that we should not permit anyone whatsoever to discuss it in our presence either with a member of the jury or any other person.

"Affiant further states that at no time during the trial of said cause up to and including the return of the verdict therein did he talk to any person or persons, nor to any juror or jurors about said case and that no outside or improper influences of any character whatever was exerted or attempted to be exerted upon this affiant at any time during the trial and further, that his decision at arriving at a verdict therein was based solely and exclusively upon the testimony and evidence offered in the trial of the case under the instructions of the court, and that the separation of the jury in no wise affected or influenced affiant in reaching or returning a verdict in said case."

With nothing in the record indicating that defendant was prejudiced by the separation of the jury, we think the State made a sufficient showing by the affidavits that defendant was not prejudiced by the separation.

Defendant had a fair trial; he was ably represented. We have carefully considered all the assignments made in the motion for a new trial, and find no reversible error. The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur except *Clark, J.*, absent.