243 S.W.2d 983 (1951)
STATE
v.
FARRIS.
No. 42558.
Supreme Court of Missouri, Division No. 1.
November 12, 1951.
Motion for Rehearing or to Transfer to Denied December 10, 1951.
*984 Morris A. Shenker, St. Louis, for appellant.
J. E. Taylor, Atty. Gen., John S. Phillips, Asst. Atty. Gen., for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied December 10, 1951.
HYDE, Judge.
Defendant was convicted of burglary in the second degree (breaking and entering with intent to steal) and sentenced to two years imprisonment. On his appeal, he contends that he was entitled to a directed verdict; that the Court erred in refusing him a continuance after granting leave to the State to endorse the name of *985 an additional witness on the information; that there was prejudicial error in Instruction No. 3; and that the Court did not take proper action on objections to the closing argument of the Assistant Circuit Attorney.
The State's evidence showed the following facts. Dan Masterson (whose name was endorsed by leave), an employee of the Plaza Express, a trucking company, locked the doors and windows of its office building and put on the burglar alarm between 6:30 and 7:00 P.M. on March 6, 1949. This was one of his daily duties. The doors to the adjacent inbound loading dock, through which defendant entered later, were locked by pin drops in a track on the floor. The burglar alarm was hooked on these doors. Masterson then worked at the outbound dock until 9:00 P.M. which was his quitting time. He said employees worked late at the outbound dock which was across the alley but not on the inbound dock next to the office building. Inbound loads were left in front of the inbound dock but they were not touched until morning.
About midnight, the burglar alarm sounded in the office of the American District Telegraph Company and one of their guards went to the Plaza Express. He had a key to the office building and went upstairs and found defendant sitting at a desk in the office, "appeared like he was kind-a bent over", and there were some desk drawers open. When the guard came in defendant sat up and started getting away from the desk. When he asked defendant what he was doing there he said he was hunting for the boss. Defendant was a driver for Plaza Express making city pick-ups and deliveries. The police were called and took defendant into custody. There were safes in the office and some cash and checks were kept there. Defendant made some collections and turned in his cash and checks on the first floor of the office building. However, nothing was found missing from the offices.
When the police came, defendant gave them his name as Charles Harris. As to defendant's actions one of the officers said: "He kind-of staggered around, and he didn't answer our questions intelligently or coherently. I did smell some alcohol on his breath, however, within a period of ten minutes he changed his attitude completely." Thereafter, they took defendant downstairs and he showed them how he entered. As to this entrance, their testimony was: "It is composed of two doors, and each door has two sections, which, on opening, fold together. At some previous time there had been some damage to the door, and there had been temporary repairs made on to it. And he showed us how he had pushed those boards, which had been nailed to the door, and in addition to the natural giving of the door, had allowed him to enter it. * * * He pushed the door in allowing enough room for him to get between the door and the sill, and into the building. * * * It was repaired in one section with small boards about a foot in width and about four foot high. * * * Those boards were pushed inward from the bottom, hanging on the top nails, and the bottom nails were out."
Defendant testified that he went to the premises to see the foreman of the outbound dock, Bud McGraw; that he entered the office building by merely pushing the swinging door forward; and that he went upstairs to wait for him or other employees to appear. He said he had often visited them at night and they would have coffee and sandwiches together. Defendant had a witness who testified that the loading docks were always open and that there were employees around at all hours day and night. However, this witness said the visiting of the employees was on the docks and not in the office and that he never did go up to the office when the office was closed, to visit with friends.
Defendant contends no jury case was made for the reason that the State failed to show he had broken into and entered the premises with intent to steal or commit a crime, which is an essential element of burglary in the second degree under Section 560.070, R.S.1949, and must be established by the evidence beyond a reasonable doubt. State v. Shipman, 354 Mo. 265, 189 S.W.2d 273, 275; State v. *986 Brown, Mo.Sup., 217 S.W.2d 546. However, in the Shipman case, 189 S.W.2d, loc. cit. 275, we said: "Such intent `may, and generally must, be proved by circumstantial evidence, for as a rule it is not susceptible of direct proof.' 12 C.J.S., Burglary, § 55, page 731. Consummation of the intent is not necessary to complete the crime of burglary. `If a person breaks and enters a house intending to steal, he is not exonerated from the commission of burglary merely because he did not steal anything or because he was frightened away before he carried out his intent * * *.' 9 Am.Jur., Burglary, § 27, pp. 254, 255." Likewise, in State v. Lugar, Mo.Sup., 84 S.W.2d 614, 616, we said: "The intent with which an act is done may be found, often can only be found, from the attendant circumstances." See also Kidd v. Commonwealth, 273 Ky. 300, 116 S.W.2d 636. We held in both of these cases that the circumstances shown were sufficient to make intent to steal a jury issue, although in the Shipman case nothing was missing from the store which had been entered and in the Lugar case, only a pair of scissors were missing and they were found on the roof of an adjacent building. In State v. Rutledge, 304 Mo. 32, 262 S.W. 718, cited by defendant, there was no substantial evidence that defendant was the person who entered the drugstore from which property was stolen, and the question of circumstantial evidence of intent was not involved.
Our conclusion concerning the evidence in this case is that there was substantial circumstantial evidence to establish, beyond a reasonable doubt, an intent to steal, if the jury accepted all the facts shown by the State as true. It is not even questioned that there was sufficient evidence of breaking and entering and all the evidence shows defendant was in a place where employees did not go at that time of night. Even defendant did not say that he had ever been in the upstairs office before and it is certainly not reasonable to believe (even from his own evidence) that he would expect to find the dock foreman or other employees in these offices at that time; certainly not if he had to gain entrance in the manner in which the police said he told them he did. The fact that defendant turned in collections in the office building, and knew that money and checks were collected there, furnishes some evidence of his criminal intent in so entering. Likewise, his actions when he was found, his apparently simulated drunkenness and giving a false name to the police are all evidence of such intent. We hold that the Court properly submitted the case to the jury.
As to the endorsement of the name of the additional witness, the record shows the following which occurred prior to the voir dire examination of the jury:
"By Mr. Rankin: Your Honor, the State asks leave to endorse the name, Dan Masterson.
"Mr. Dobberstein: If the Court please the defendant claims surprise and moves the Court to continue this cause to enable defendant to take the deposition of the witness.
"By the Court: Leave granted to endorse. Objection and motion of defendant overruled." (Exception) The record also shows "memorandum filed", but this is not before us.
Section 545.240, R.S.1949, requires: "The names of the witnesses for the prosecution must be endorsed on the information, in like manner and subject to the same restrictions as required in case of indictments."
Section 545.070, R.S.1949, requires such endorsement of names on indictments but provides: "Other witnesses may be subpoenaed or sworn by the state, but no continuance shall be granted to the state on account of the absence of any witness whose name is not thus endorsed on the indictment, unless upon the affidavit of the prosecuting attorney showing good cause for such continuance."
Many cases have considered the effect of these requirements. See cases annotated under Sections 3933 and 3894, Vol. 12, Mo.R.S.A.1939. They hold the trial court has large discretion in this matter. See State v. Baker, 318 Mo. 542, 300 S.W. 699. An important factor is whether *987 the State is acting in good faith and has not purposely withheld the names of witnesses. See State v. Nettles, 153 Mo. 464, 55 S.W. 70. On the other hand, it is to be expected that the State in preparing for trial may find additional witnesses and their use is contemplated by the wording of the statute. Their use has been permitted even when they were first called during the trial. See State v. Lowry, 321 Mo. 870, 12 S.W.2d 469; State v. Hefflin, 338 Mo. 236, 89 S.W. 2d 938, 103 A.L.R. 1301; State v. Short, 337 Mo. 1061, 87 S.W.2d 1031, of course, the State should be fair with the defendant and could give him the names of additional witnesses even before leave to endorse their names is sought, which is frequently done. See State v. Boone, 355 Mo. 550, 196 S.W.2d 794; State v. Merrell, Mo.Sup., 263 S.W. 118. However, if a defendant is really serious in his claim of surprise and actually feels a continuance is necessary on this ground, he should do more than defendant did in this case. See State v. Wilson, 321 Mo. 564, 12 S.W.2d 445; State v. Lindsey, Mo.Sup., 80 S.W.2d 123; State v. Derrington, Mo.Sup., 137 S.W.2d 468; State v. Boone, 355 Mo. 550, 196 S.W.2d 794. As these and other cases show, if a defendant believes he would be prejudiced, he should request time to file an affidavit of surprise or a formal application for continuance or in some manner give to the Court the specific reasons why he claims he will be prejudiced and needs more time to meet the testimony of such additional witness. Here Masterson's name was endorsed before the jury was examined, so that defendant had the opportunity to question the jury concerning any acquaintance or relationship. Masterson was the first witness called and defendant made no further objection then; and after he testified, he did not ask for more time to meet his testimony. The principal matter as to which Masterson testified was the locking of the office building and defendant certainly should have anticipated that some witness would testify about that. Defendant did have different testimony as to the condition of the door through which he entered and, therefore, it appears that he did anticipate it. Our conclusion is that defendant did not show prejudice from the Court's action, and that there is no basis for finding that the Court abused its discretion in granting the leave under the circumstances of this case.
Defendant's claim of error in Instruction No. 3, authorizing punishment under the habitual criminal statute, Sec. 556.280, R.S.1949, is that it stated: "If it should appear from the evidence that the defendant has been formerly convicted and served sentences, this fact will have no direct bearing upon the charge in this case." (Our italics.) Defendant objects to the use of the word "direct" and says that this implies that defendant's former convictions for larceny, referred to in the instruction, were to be taken into consideration to some extent in determining his guilt on the present charge. However, the next two sentences of the instruction were as follows: "He is to be tried for the offense of burglary in the second degree alleged to have been committed on the 6th day of March, 1949, solely, and only upon the evidence which is introduced before you at this trial pertaining to such offense. The fact of former convictions, if you find them to be facts, should be considered by the Jury only as bearing upon the question of the amount of punishment you are to inflict in case you find him guilty upon the present charge of burglary in the second degree." While the word "direct" should have been omitted, as we said in State v. Sapp, 356 Mo. 705, 203 S.W.2d 425, loc. cit. 430, "An instruction must be considered in its entirety and if the entire instruction when judicially examined correctly presents the law, an assignment as to an isolated paragraph, which considered alone might be misleading, must fail." It is to be noted that the jury herein did not assess punishment under the habitual criminal instruction but assessed only the minimum punishment authorized for burglary. We hold that the entire instruction made it clear that defendant's former convictions were not to be considered for any purpose except the amount of punishment and that there was no prejudicial error in this use of the word "direct".
*988 As to defendant's contentions concerning the argument of the Assistant Circuit Attorney, there is nothing preserved for appellate review because his motion for new trial does specify what remarks were claimed to be improper but only makes a general reference to improper argument, and failure to take action on objections thereto, without stating what it was. Section 547.030, R.S.1949; State v. Tippett, 317 Mo. 319, 296 S.W. 132; State v. Janes, 318 Mo. 525, 1 S.W.2d 137; State v. Spencer, 355 Mo. 65, 195 S.W.2d 99.
The judgment is affirmed.
All concur.