STATE of Missouri, Respondent,

v.

Ida Lillian HACKER, Appellant.

No. 44938.

Supreme Court of Missouri.

Division No. 1.

June 11, 1956.

**156**

Morris A. Shenker, Bernard J. Mellman, St. Louis, for appellant.

John M. Dalton, Atty. Gen., John S. Phillips, Asst. Atty. Gen., for plaintiff-respondent.

COIL, Commissioner.

Ida Lillian Hacker, defendant below, was convicted of abortion. The jury found also that she had been priorly convicted of a felony and fixed her punishment at five years in the state penitentiary. On her appeal from the ensuing judgment she contends that the trial court erred in giving and refusing instructions, in refusing to grant her motion for a continuance, in the admission of evidence, in improperly restricting her right of cross-examination, and in denying her requests for mistrial because of allegedly improper and prejudicial argument by the assistant circuit attorney.

The jury reasonably could have found that one Mary Bullock, a divorcee, became pregnant and, without any necessity to preserve her life or that of an unborn child, went to the defendant, a midwife, on February 19, February 22, and February 24, 1954, at which times defendant, by the use of instruments and other devices, feloniously and intentionally caused Mary Bullock to abort; that on January 10, 1947, defendant had been convicted of abortion, was sentenced to pay a fine, and was duly discharged upon compliance with said sentence. We shall refer to the evidence in more detail when necessary in connection with defendant's specific contentions.

■■■ Defendant says that the trial court erred in giving Instruction 2 on behalf of the state. That instruction explained that defendant was charged with the offense of abortion and that it was further charged that she had formerly been convicted of a felony; that her guilt or innocence was to be determined from the evidence adduced upon the abortion charged to have been committed between February 19 and February 26, 1954, and that the former conviction, if any, could be considered only as bearing on the question of punishment. The instruction then proceeded in its second paragraph as follows: "If under Instruction No. 1, you find defendant guilty of Abortion, alleged to have been committed between February 19, 1954 and February 26, 1954, and further find and believe from the evidence, beyond a reasonable doubt, that before February 19, 1954 the defendant had been convicted, by trial, of a felony, and in accordance with said conviction was duly sentenced by the Court to pay a fine and costs for commission of such felony, and duly paid said fine and costs, and was duly discharged therefrom after and upon lawful compliance with said sentence imposed, then you

shall assess the punishment of the defendant at imprisonment in the State Penitentiary for the term of five years." Defendant contends that the instruction erroneously "permitted the jury to assess punishment under the Habitual Criminal Act [Section 556.280 et seq. RSMo 1949, V.A. M.S.] without requiring a finding of a specific prior conviction, a specific sentence and the compliance therewith."

It is true, as defendant contends, that the instruction refers to a prior conviction "of a felony" and does not hypothesize specifically, as the instruction should have done, the particular offense of which the defendant was charged to have been convicted previously. The indictment did properly charge a prior conviction of the offense of abortion and did properly charge that she had been sentenced to pay a fine and had been discharged upon compliance with that sentence. It is also true, as defendant contends, that the Habitual Criminal Act is highly penal and has been and must be strictly construed, and that both the conviction and discharge by pardon or compliance with the sentence must be pleaded and proved. State v. Harrison, 359 Mo. 793, 794, 223 S.W.2d 476, 478 [1]; State v. Young, 345 Mo. 407, 413, 133 S.W. 2d 404, 408 [13–15]. It clearly appears, however, that defendant was not prejudiced by the failure of the instruction in the instant case to have hypothesized the specific offense of which defendant had been theretofore convicted. This, because the record demonstrates that the only proof adduced as to any prior conviction of defendant pertained to a conviction of the offense of abortion as charged in the indictment, and, consequently, the jury reasonably could not have and would not have believed that it could have found defendant guilty of any prior conviction other than the only one charged in the indictment and supported by proof.

Defendant contends that the court erred in refusing to give her offered Instruction B: "You are instructed that if you find and believe from the evidence that Mary Bullock requested or consented to the performance of the alleged operation referred to in the evidence, if you find that such operation did in fact occur, then that fact may be considered by you in determining the credibility of said witness' testimony."

It has been ruled in State v. Miller, Mo., 261 S.W.2d 103, 106 [2, 3], that "A prosecutrix' moral implication is for the jury's consideration in weighing her testimony, * * *." That statement was made by the court in passing on the sufficiency of the evidence to sustain a conviction of abortion. In State v. Decker, 340 Mo. 972, 104 S.W.2d 307, 311 [6, 7], it was stated that an instruction should be redrafted which *precluded* a jury from considering the request of a deceased for an abortion in "'making up their verdict,'" and that "While consent to, desire for, or request of a criminal abortion would not constitute a defense * * *, the jury is privileged to consider such facts in reaching their verdict."

Defendant argues that because of the foregoing decisions she was entitled to a specific instruction directing the jury that it might consider the fact of Mary Bullock's request for, or consent to, the instant abortion in determining the credibility of her testimony. That contention is without merit under the facts of this case. There was no instruction given directing the jurors' attention to the law that a prosecutrix' consent to or request for an abortion was not a defense. See State v. Fitzgerald, Mo., 174 S.W.2d 211, 214. And the court gave the usual general instruction on the credibility of the witnesses and the weight to be given their testimony, in which it told the jury, among other things, that in determining credibility and weight it could take into account all the facts and circumstances given in evidence. Under such circumstances, defendant's offered Instruction B was properly refused because it erroneously singled out for comment the credibility of the one witness, Mary Bullock, and isolated particular facts for their special consideration applicable alone to her testimony. State v. Pollard, 174 Mo. 607, 614, 615, 74 S.W. 969, 970; State v. Perkins, Mo., 92 S.W.2d 634, 639; State

v. Shelton, 223 Mo. 118, 139, 140, 122 S.W. 732, 739.

■ Defendant contends that the trial court erred in refusing to give Instruction C: "The Court instructs the jury that if upon a consideration of all the evidence, you have a reasonable doubt as to whether Mary Bullock was in good health on or immediately prior to February 19, 1954, then you are instructed to find the defendant not guilty."

The state's main instruction in pertinent part hypothesized that defendant wilfully, feloniously, and unlawfully used and employed a certain instrument with the intent to produce an abortion "upon and to the person of the said Mary Bullock, she being then and there pregnant and in good health, if you so find, said act, if any, not being then and there necessary to preserve the life of the said Mary Bullock, if you so find, or that of an unborn child of the said Mary Bullock, * * *."

Section 559.100 RSMo 1949, V.A.M.S., under which defendant was indicted, requires proof and finding of the nonnecessity of the abortion to preserve the life of the person aborted or the life of her unborn child. It was held in State v. De-Groat, 259 Mo. 364, 379–381, 168 S.W. 702, 707, 708, that the burden of proof is upon the state to prove such nonnecessity of the abortion and that a prima facie case of nonnecessity is made by proof that the woman involved was in good health or in her usual and ordinary state of health immediately prior to the commission of the abortion charged. Defendant contends that under the usual rule pertaining to instructions in both civil and criminal cases, she had the right to converse any essential element of the crime charged and hypothesized in the state's instruction.

The difficulty with defendant's position is that the fact that the state may make a prima facie case of a nonnecessity by proof of good health does not mean that good health of the woman aborted was an essential element of the offense or that it was necessary to have hypothesized such in the instruction. The essential element to be hypothesized was not Mary Bullock's good health; rather it was the nonnecessity of the abortion to preserve her life or the life of her unborn child. The language in state's Instruction No. 1 relating to a finding of Mary Bullock's good health was surplusage and proper only as a part of the total essential hypothesis of nonnecessity to preserve life. Defendant's Instruction C constituted a positive misstatement of the law in that it directed a verdict of not guilty if the jury had a reasonable doubt as to whether Mary Bullock was in good health immediately prior to February 19, 1954. Defendant thereby ignored and did not undertake to negative or converse the pertinent essential element of the offense, viz., the nonnecessity of the operation to preserve life, irrespective of the health of the person aborted immediately prior to the abortion. It follows that the trial court correctly refused Instruction C.

■ The record indicates that prior to the impaneling of the jury but perhaps after voir dire examination, the court permitted the state, over defendant's objection, to endorse the name of the witness, special officer Alfred Tucci. The record further indicates that there was a discussion of that question prior to the time above indicated but it is not clear when the state first made the request. In any event, defendant asked for leave to file an affidavit of surprise and for continuance. The court granted permission to file such an affidavit out of time. The record does not indicate that any such affidavit ever was filed. All that we may glean from the various statements of defendant's counsel made at the time is that he claimed surprise at the endorsement of the witness and wanted a continuance. Later, when the witness was offered, defendant's counsel stated: "I want to renew my objection on the ground of surprise." The court overruled that objection and refused to limit the state in its examination of the witness to matters theretofore covered. The witness Tucci testified that he talked with defendant on March 4, 1954, in the Twelfth District police station and that she stated with respect to an inquiry about

the names "Ida Lillian Hacker" and "Ida Lillian Seddon" that "I am one and the same person. I was Ida Lillian Seddon. I am now Ida Lillian Hacker."

That testimony was material on the issue of prior conviction because the records adduced pertaining to the charged prior conviction showed that Ida Lillian Seddon was the one convicted.

Defendant contends that she was prejudiced by the testimony of the witness Tucci and that the trial court abused its discretion in permitting the endorsement of his name without granting a continuance to permit her to discover the proof to be adduced through that witness. The record, however, does not demonstrate prejudice to defendant or abuse of the trial court's discretion. As we have indicated, all the record really shows is that defendant's counsel claimed surprise and wanted a continuance and obtained permission to file an affidavit (which was not filed) out of time.

In the recent case of State v. Farris, Mo., 243 S.W.2d 983, 986 [3–7], 987, this division reviewed many of the cases which have considered the effect of the requirements of Section 545.070 RSMo 1949, V.A.M.S., pertaining to the endorsement of the names of witnesses on indictments. It was there pointed out that those cases hold that the trial court has a "large discretion" in ruling the matter of the state's right to endorse the name of a witness at any particular stage of a proceeding; that the state *may* call additional nonendorsed witnesses even when they are called during the trial; that the fairness of the state is an important element in our review of a trial court's discretion in particular circumstances, and this court then said: "However, if a defendant is really serious in his claim of surprise and actually feels a continuance is necessary on this ground, he should do more than defendant did in this case. See State v. Wilson, 321 Mo. 564, 12 S.W.2d 445; State v. Lindsey, Mo. Sup., 80 S.W.2d 123; State v. Derrington, Mo.Sup., 137 S.W.2d 468; State v. Boone, 355 Mo. 550, 196 S.W.2d 794. As these and other cases show, if a defendant believes he would be prejudiced, he should request time to file an affidavit of surprise or a formal application for continuance or in some manner give to the Court the specific reasons why he claims he will be prejudiced and needs more time to meet the testimony of such additional witness. Here Masterson's name was endorsed before the jury was examined, so that defendant had the opportunity to question the jury concerning any acquaintance or relationship. Masterson was the first witness called and defendant made no further objection then; and after he testified, he did not ask for more time to meet his testimony. The principal matter as to which Masterson testified was the locking of the office building and defendant certainly should have anticipated that some witness would testify about that. Defendant did have different testimony as to the condition of the door through which he entered and, therefore, it appears that he did anticipate it. Our conclusion is that defendant did not show prejudice from the Court's action, and that there is no basis for finding that the Court abused its discretion in granting the leave under the circumstances of this case."

While there are differences in the fact situations in the last cited and the instant case, nevertheless we are of the opinion that defendant in the instant case likewise needed to do more than she did in order to cause us to conclude that defendant was prejudiced by the trial court's action. No specific ground for continuance was stated orally. No affidavit was subsequently filed. In view of the charge made in the indictment as to a prior conviction, the defendant must have anticipated that some witness would testify with respect to the fact that the person convicted of abortion on January 10, 1947, was the same person as the instant defendant.

Our conclusion is that defendant has not shown wherein prejudice resulted from the trial court's action, and, therefore, we may not hold that the trial court abused its discretion in permitting the witness' name to

be endorsed and in permitting the witness to testify.

Defendant next contends that the trial court erred in admitting certain testimony for the assigned reason that the testimony so admitted was hearsay and, defendant says, thereby deprived her "of her constitutional right of confrontation in violation of Article I, Section 18 of the Missouri Constitution [V.A.M.S.]."

Dr. Lipshutz, who was the regular physician for Mary Bullock, testified that at the time she came to his office on January 6, 1954, she complained to him of amenorrhea and soreness in her breasts. Defendant says that such testimony was "as to the history of complaints which Mary Bullock had given him." Obviously, the doctor did not testify to any *history of complaints* given to him by Mary Bullock but, on the contrary, testified only to the present complaints of his patient at the time of an examination which he proceeded to make and from which he diagnosed her as pregnant. It was not error to permit the doctor to relate the patient's statements to him of her then existing symptoms. Jones v. Terminal R. R. Ass'n of St. Louis, Mo.App., 246 S.W.2d 356, 359 [1–3].

The doctor also testified, over defendant's objection, that Mary Bullock told him that she went to a midwife and had an abortion. An examination of the record discloses that the doctor, prior to the last statement noted, had testified to substantially the same statement by Mary Bullock when being cross-examined by defendant's counsel. Defendant's counsel on cross-examination brought out that Mary Bullock had told the doctor that she planned to have an abortion, that he tried to dissuade her from so doing, and that "she told me she was going to and she told me she had had it." Defendant, of course, may not successfully complain of testimony to the same effect as that first adduced by her on cross-examination of the witness.

Defendant next complains that the court permitted Mary Bullock to testify, over defendant's objection, that "I figured that was my only way out—to find a midwife. I looked through the telephone directory and I found another woman's name under midwife and I called the woman and she sent me to Mrs. Hacker." It seems apparent that that answer, standing alone (and the matter was not developed), could not have prejudiced defendant. Mary Bullock had testified in detail concerning her three visits to defendant's premises and as to defendant's acts which produced the abortion. Why Mary Bullock originally went to defendant was not material to the issues as made, but defendant has failed to point out, and we fail to find, wherein any possible prejudice to her resulted from the admission of that testimony.

Defendant contends that the trial court erroneously permitted police corporal Owens to testify that when he arrested defendant, she showed him a midwife's license and that the name on the license was "Seddon." The objection was that the answer constituted hearsay and was not the best evidence. Certainly the testimony was not hearsay. True, the license would have been the "best evidence" as to what the license showed at trial time, but the witness' testimony as to the fact that defendant did display to him a midwife's license with the name "Seddon" on it may have been some evidence from which the jury could infer that defendant was known also as "Seddon." In any event, however, the only possible effect of that testimony was to tend to prove that defendant was the same person as the Ida Seddon theretofore convicted of abortion; consequently, Officer Tucci's properly received testimony of defendant's admission that she and Ida Lillian Seddon were one and the same person cured any possible error in the admission of the testimony of Corporal Owens.

Defendant further contends that she was unduly restricted in her right to cross-examine the state's witness, Mary Bullock, with respect to whether that witness knew it was against the law to solicit an abortion. Suffice to say that while the

trial court did sustain two objections to the question as to the witness' knowledge as to whether it was against the law to solicit one to perform an abortion, the fact remains that thereafter the court permitted this question and answer: "Q. Did you know it was against the law to have an abortion performed? A. I did * * *." It is apparent that the information sought by the questions to which objections were sustained was essentially supplied by the last question and answer above noted, and, consequently, any possible error was cured by the admission of the subsequent testimony. State v. Shipley, Mo., 232 S.W.2d 515, 518 [6].

Defendant finally contends that the trial court erred in overruling objections and denying requests for a mistrial during the jury argument. The assistant circuit attorney argued that he was not representing Mary Bullock and did not condone what she had done, that while some might think her action all right, that if there is a God in Heaven, He would not condone what she had done. He further argued that the jury would know from their "own common experience" as to "how prevalent abortions occur." Objections to those arguments were overruled and motions to disregard and for mistrial were denied.

Later the assistant circuit attorney argued that if a person is guilty of a crime and is convicted, the jurors have nothing to be ashamed of, but if he is guilty "and nothing is done, then the State is ashamed —we are not protecting our laws." The court sustained an objection to that argument but refused to grant a motion for mistrial.

The final argument complained of was: "What you do here doesn't stop in the Court; it doesn't affect only the rights of the defendant. The State is an interested party, and what you gentlemen do is known. All over the City—."

The first argument above, irrespective of every other consideration, could not have been prejudicial to defendant because it, in effect, was a condemnation of the action of the prosecuting witness, emphasizing her consent to and the solicitation of the abortion.

The next argument, which we construe as a comment upon the prevalence of the occurrence of abortions as a matter of common knowledge, was not an improper argument. State v. Murray, 316 Mo. 31, 38, 292 S.W. 434, 438 [13–15]; State v. Elvins, 101 Mo. 243, 246, 13 S.W. 937, 938.

The court sustained defendant's objection to the third argument noted above, and certainly it is apparent that we could not hold that the trial court abused its discretion in failing to declare a mistrial after he had sustained defendant's objection.

The final argument noted, referring to the fact that the action of the jury would be known over the city, was not improper. State v. Carter, 345 Mo. 74, 77 [4], 131 S.W.2d 546, 548 [5, 6].

We have examined the foregoing arguments in their full context and we are convinced that none of them, singly or in their cumulative effect, prejudiced the substantial rights of the defendant.

Finding no error in any of the matters briefed on this appeal, and finding no prejudicial error in the matters which we examine irrespective of whether preserved for appellate review, the judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.