**STATE of Missouri, Respondent,**

v.

**Billy J. McGINNIS, Appellant.**

No. 53862.

Supreme Court of Missouri,
Division No. 2.

June 9, 1969.

John C. Danforth, Atty. Gen., Jefferson City, Thomas C. Walsh, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Ellsworth Haymes, Marshfield, for appellant.

STOCKARD, Commissioner.

Appellant was found guilty of escaping from the Honor Camp of the Department of Corrections located at Fordland, Missouri. The jury assessed his punishment at imprisonment for three and one-half years, and appellant has appealed from the ensuing judgment.

Appellant does not challenge the sufficiency of the evidence pertaining to the offense of which he was found guilty. Briefly stated, while under custody at the Honor Camp appellant left without permission, and after being at large for almost a year he was apprehended at Evanston, Wyoming, and returned to Missouri.

The first three points in appellant's brief are to the effect that he was denied a fair trial as the result of an incident which occurred in the courtroom in the presence of the panel of prospective jurors.

Appellant was represented by appointed counsel. When he was brought to court he requested and was granted a hearing in the court's chambers. He then advised the court that he did not want to be represented by Mr. James S. Pope, his appointed counsel. His reason is not clear, but he stated that he had "a dislike" for him, "not personally, but what he said, the way he said it." Appellant indicated that this resulted because his counsel would not agree that there was merit to what he thought

constituted a defense to the charge against him. Apparently appellant thought that because this court had directed that he could file a motion pursuant to Supreme Court Rule 27.26, V.A.M.R., he was not lawfully confined, and for that reason his escape was not from lawful confinement. The court directed that they return to the courtroom and proceed with the trial.

After returning to the courtroom, and in the presence of the prospective jurors, appellant asked the court: "Are you leaving him [Mr. Pope] in the case?" When the court indicated that it was, appellant stated, "I want—don't want to get mad, but I cannot have this man as my lawyer; that is all." The court advised appellant that it considered Mr. Pope to be competent, and that it would not appoint different counsel, and when the court stated that the trial would proceed with Mr. Pope as appellant's counsel the following occurred: "Defendant swung one arm and hand and knocked papers and documents off the table at which his counsel was seated, [and] walked rapidly to within some three feet of a door leading into the hallway some twenty-five feet from said counsel table." At the direction of the court the sheriff escorted appellant back to the counsel table. When the court attempted to admonish appellant concerning his conduct, appellant addressed the court as follows: "What are you going to do, lock me up? I said he [Mr. Pope] wasn't going to be my counsel. You are not going to put me in jail are you? I have rotted in jail for twelve years, Mister." The transcript shows that appellant began pacing back and forth across the courtroom. He asked if he could "go outside a minute," and when the court stated it did not know why he wanted to go outside, but that it would grant him any reasonable request, appellant replied, "I won't ask you for nothing." He continued pacing the floor, and when the court directed him to sit down, he refused and stated, "I am not going to stand for it." Subsequently the court directed the sheriff to "restrain this man," and the defendant replied, "Do it." Appellant's coun-

sel, out of the hearing of the prospective jurors, moved that the jury be dismissed, but the court refused, commenting that appellant "has brought it on himself." The transcript shows that appellant continued to pace the floor, and the court asked: "Will you sit down, Mr. McGinnis?" When the court stated, "You will conduct yourself properly," appellant replied, "I hope you rot in hell." Appellant later told the court, "I will do everything I can to disrupt this court," and when the court directed the trial to proceed appellant stated, "You might as well gag me now." He later stated, "That is what you are going to have to do, because I'm not going to let this go on," and "You are going to have to gag me before you can make me take that lawyer." At the direction of the court, the sheriff then placed handcuffs on appellant and escorted him to the counsel table. Subsequently when the court addressed appellant as "Mr. McGinnis," appellant replied, "Don't Mr. McGinnis me," and he then directed an obscenity at the court, and immediately thereafter repeated it and added, "You are in for a lot more before this day is over with." He also turned to his counsel and said, "Why don't you get lost, fellow? Don't you know you are not wanted?" Appellant stated to the court: "Why don't you go ahead and give me the five years now? Why are you going through this mockery? Are you too much of a hypocrite to answer that?" The court then declared a recess, and directed that the prosecuting attorney, appellant and his counsel go to the court's chambers. In chambers, the court advised appellant that the trial would proceed, that if he conducted himself properly he would be seated in the courtroom and not be handcuffed or gagged, but that it was the court's duty to maintain order in the courtroom and it was going to do so. While in the court's chambers appellant apologized for his conduct, the handcuffs were removed, and the trial continued with appellant seated at the counsel table with his appointed counsel.

During the selection of the jury the court advised the panel that the case was to be decided only on the basis of evidence adduced from the witness stand, and it also questioned the prospective jurors as to whether what they had seen or heard might cause them not to be able to give a fair hearing to either the state or the appellant. One member of the jury panel answered affirmatively, and upon motion of appellant's counsel he was excused for cause.

Appellant first contends that he should not have been handcuffed in the presence of the jury because his "actions had not been of such character to justify such drastic action." He relies on State v. Rice, 347 Mo. 812, 149 S.W.2d 347, and State v. Boone, 355 Mo. 550, 196 S.W.2d 794.

In State v. Rice, supra, it was held that "'when a prisoner is brought into court for trial, upon his plea of not guilty to an indictment for a criminal offense, he is entitled to make his appearance free from all shackles or bonds * * * and to justify the keeping of shackles upon the prisoner during the trial there must arise during the trial some good reason therefor based upon the conduct of the prisoner, in the absence of which such action [in using shackles] would be improper and would deprive the defendant of a substantial legal right, to his prejudice.'" In State v. Boone, supra, it was held that "Having a defendant shackled during his trial will be permitted only in exceptional circumstances."

In this case appellant was not in handcuffs when he was brought to the courtroom. He was not handcuffed until after he refused to remain in his seat in the courtroom and permit the trial to proceed, and after he told the court he was going to do everything he could to "disrupt the court."

■ The trial court is charged with maintaining orderly procedure in the courtroom, and it may properly exercise discretion in determining the steps necessary to maintain order. State v. Cox, Mo., 352 S.W.2d 665. The record impels the conclusion that the trial court directed that appel-

lant be handcuffed only after it became obvious that he intended to carry out his threat to disrupt completely the trial of his case. The conduct of appellant constituted the "good reason" referred to in State v. Rice, and the "exceptional circumstances" referred to in State v. Boone. In view of appellant's conduct in the courtroom, there was no abuse of discretion on the part of the trial court in directing that appellant be handcuffed.

■ Appellant next contends that he was prejudiced by the refusal of the court "to excuse the jury upon Mr. Pope's request, and permitting them to view and hear the defendant's actions after he had become so disturbed." The relief requested by appellant would require the declaration of a mistrial in the event of improper behavior by a defendant in a criminal proceeding. It would be an open invitation to any defendant to engage in similar conduct and thereby prevent his trial from reaching a conclusion, and it would place a premium on a defendant's own misconduct. See State v. Polakoff, 361 Mo. 929, 237 S.W.2d 173, 176; State v. Gilmore, 336 Mo. 784, 81 S.W.2d 431, 432; and State v. Sanders, Mo., 313 S.W.2d 658. We find no abuse of discretion in refusing to discharge the jury panel.

■ Appellant also contends that "the trial court's interrogation of witnesses, combined with the prior dialogue between the court and defendant, was prejudicial to the right of defendant to a fair and impartial trial." This contention was not mentioned in appellant's motion for new trial and therefore is not preserved for appellate review. We will examine it to determine whether it could result in plain error within the meaning of Supreme Court Rule 27.20(c), V.A.M.R.

Appellant refers to four questions asked by the court of the records officer of the penitentiary at the conclusion of his testimony. The questions sought to clarify his testimony as to whether the record from which he had been reading referred to appellant, whether the witness knew appellant, and as to when appellant was transferred to the Honor Camp. Appellant also refers to a question asked another witness by the court as to whether the Honor Camp was located in Webster County.

■ "One of the well-recognized powers of the judicial function is the right and duty of the trial judge to propound additional questions to witnesses in order to develop the truth more fully and to clarify the testimony given." State v. Grant, Mo., 394 S.W.2d 285. The questions in this case did not in the least tend to show any abuse of discretion in the exercise of this power as demonstrated in State v. James, Mo., 321 S.W.2d 698. No objection was made to the questions, but if objection had been made and the matter had been preserved for appellate review in the motion for new trial, the asking of the questions would not have been error; much less constitute plain error within the meaning of Rule 27.20(c).

Appellant has filed pro se what he calls a supplementary brief in which he states that his counsel on appeal, which was not his trial counsel, "left out facts which will have a great bearing on this case." He then sets forth several matters, some of which are contrary to or not in accord with the transcript. This supplementary brief presents no issue for determination.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.