**STATE of Missouri, Respondent,**

v.

**Bonnide Wilford JOHNSON, Appellant.**

**No. 57888.**

Supreme Court of Missouri,
Division No. 1.

Oct. 8, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Richard D. Mills, Michael W. Dunlop, St. Louis, for appellant.

HIGGINS, Commissioner.

Bonnide Wilford Johnson, charged with two counts of robbery, first degree, by means of a dangerous and deadly weapon, was convicted on both counts by a jury which assessed his punishment at fifteen years' imprisonment on each count. Sentence and judgment were rendered pursuant to the verdict; and the court further ordered that the sentences run concurrently and that defendant be credited with jail time prior to conviction. §§ 560.120, 560.-135, RSMo 1969, V.A.M.S., Rule 24.04, V.A.M.R. Appellant asserts presence of questions involving construction of the Constitutions of the United States and Missouri.

By Point III appellant attacks the sufficiency of the evidence asserting, in particular, "that the State failed to prove that appellant's crime was committed by means of a dangerous and deadly weapon as charged."

Count I of the indictment alleged that Bonnide Wilford Johnson, on June 8, 1971, in the City of St. Louis, feloniously and by means of a dangerous and deadly weapon, to-wit: two hand guns, did rob and take $94, the property of Chicago Metropolitan Mutual Assurance Company in the care and custody of Mary Oldham, by putting her in fear of immediate injury to her person. Count II was identical except for the amount taken, $123, and the victim, Howard McGruder.

A brief statement of the evidence demonstrates that the State made a submissible case of robbery, first degree, by means of a dangerous and deadly weapon, on both counts of the indictment.

On June 8, 1971, Mary Oldham was a secretary at the Chicago Metropolitan Mutual Assurance Company, 2801 North Kingshighway, St. Louis, Missouri. Around 9 a.m., two men entered her office and the smaller of the two, holding a revolver, jumped a counter, announcing "this is a stick-up." Pursuant to the robber's demand, Mrs. Oldham gave him all the company's loose money in her possession, about $80, and the petty cash amounting to $8.11. She was then ordered to the back of the office and to lie down, at which time she saw that both men had guns, identified as Exhibits 6 and 7, taken from defendant and the other man. When police officers arrived about twenty minutes after the robbery, Mrs. Oldham went outside and saw both of the robbers in police custody. The smaller man was seated in the police car. Mrs. Oldham identified defendant as the smaller man at trial.

Howard McGruder was a collector for the Chicago Metropolitan Mutual Assurance Company and, at the time and place in question, was in the agency room behind the front office counting money collected from company accounts the previous night amounting to $119. A man approached with an automatic gun, Exhibit 7, announced "this is a stick-up," told all the agents to lie down, and took the $119. Mr. McGruder observed the man to cock the gun, "he pulled the chamber [slide] back," prior to making his demands. Mr. McGruder also saw defendant seated in the police car but had not seen him during the robbery.

Charles Cotton, another employee of the assurance company, was in a rear office and heard noise out front. He peeped through a door and saw a man standing over the others on the floor. He then locked the door and called the police. The police arrived within ten minutes.

Leondus Bates, a St. Louis police officer at the time in question, and his partner responded to the call for police help. Upon arrival he saw one man two or three feet inside the door and saw a second coming from the back room. The first man was Richard Irons from whom he took a 45-caliber automatic hand gun; the second was defendant with a bag and small-caliber gun which he later found on the floor of the building. This gun, Exhibit 6, was loaded but in a condition with rendered it

impossible to fire. The other gun, Exhibit 7, was also loaded. Its condition was not described beyond that given by Mr. McGruder.

■■■ Appellant's argument under Point III is that a weapon, Exhibit 6, which cannot be fired cannot be considered a dangerous and deadly weapon.

This argument overlooks the presence and use of Exhibit 7. The evidence showed it to be a 45-caliber automatic, loaded with bullets, with its "cocking" mechanism operative, being used to commit a robbery. These circumstances permitted the jury to infer that Exhibit 7 was a dangerous and deadly weapon. State v. Kowertz, 324 Mo. 748, 25 S.W.2d 113 (1930); State v. Hagerman, 244 S.W.2d 49 (Mo.1951).

■ By Point I appellant charges the court erred in overruling his motion to discharge the trial jury "because there was arbitrary exclusion of black persons from the jury by the State which precluded the * * * right to a fair and impartial trial."

This point is presented without supporting authorities and appellant has made no attempt to demonstrate a scheme of discrimination through the State's use of its peremptory challenges. It also appears from appellant's presentation that even though the trial jury consisted of twelve white persons, there were black persons in the venire, one of whom was stricken by the appellant. Appellant's assertion does not prove itself, State v. Dowe, 432 S.W.2d 272 (Mo.1968), State v. Mooring, 445 S.W.2d 303 (Mo.1969); and this case is thus controlled by the rule of State v. Davison, 457 S.W.2d 674 (Mo.1970), following Swain v. Alabama, 380 U.S. 202, 222, 85 S.Ct. 824, 837, 13 L.Ed.2d 759:

"The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result * * * would establish a rule wholly at odds with the peremptory challenge system * * *."

■ By Point II appellant charges the court erred by physically restraining him during the trial, thereby creating prejudice in the minds of the jury and denying him a fair and impartial trial.

It appears that during a recess at the conclusion of the State's case, the sheriff was removing the defendant from the courtroom and he broke loose from the sheriff outside the courtroom in an attempt to escape. The defendant was apprehended by another sheriff and placed in the holdover for the remainder of the recess. It appears also that defendant, acting for himself, had vocally protested the fairness of his trial on two prior occasions and had been warned that further disturbances would call for drastic action.

■■ As suggested by appellant, a defendant has a right to be present during his trial in civilian clothing and without restraints. State v. Kring, 64 Mo. 591 (1877); State v. Rice, 347 Mo. 812, 149 S.W.2d 347 (1941); however, the court is charged with maintaining order in the courtroom and may exercise discretion with respect to the things necessary to that end. State v. McGinnis, 441 S.W.2d 715 (Mo.1969).

In the exceptional circumstances of this case, the court did not abuse its discretion and properly ordered that defendant be handcuffed during the remainder of the trial, i. e., the instructions, argument, and verdict proceedings, for reasons of order and security. State v. Rice, supra; State v. Boone, 355 Mo. 550, 196 S.W.2d 794 (1946); State v. Richards, 467 S.W.2d 33 (Mo.1971); State v. McGinnis, supra.

By Point IV appellant contends Instructions 1 and 2 were confusing and prejudiced the jury in that they asked for two separate findings of guilt when only one crime was committed; that the court's comment to the effect that the jury was to consider itself the trier of two distinct cases was inconsistent with his charge that defendant's pleas of not guilty raised "an issue of fact," thereby confusing the jury; that by authorizing two separate findings of guilt the jury was empowered to assess a double punishment against defendant for a single offense against his right not to be twice put in jeopardy.

The indictment charged two separate robberies in separate counts, i. e., the assault on and robbery of Mary Oldham, and the separate assault on and robbery of Howard McGruder, in the manner and form for joinder of offenses under Rule 24.04, V.A.M.R., and the evidence demonstrates a submissible case on each of the robberies so charged. The court's opening remarks to the jury advised: "This case is in two counts and at the conclusion of the evidence, the Court will instruct you with respect to the law applicable to both counts and will submit to you verdict forms requiring you to return a verdict separately with respect to both counts, however, the evidence will be tried together, but you must keep in mind you are trying in effect two cases at the same time and—in one—in one proceeding, and at the conclusion of the case it may be that you can find the defendant not guilty on both counts or not guilty on one count and guilty on another." The words "an issue of fact" appear in the court's introduction to the instructions and are the conventional words for that purpose. Instruction 1 submitted Count I of the indictment, the robbery of Mary Oldham; Instruction 2 submitted Count II, the robbery of Howard McGruder. Both instructions follow approved forms. The jury was given four verdict forms covering all verdict possibilities, i. e., guilty on Count I and guilty on Count II; not guilty on Count I and guilty on Count II; guilty on Count I and not guilty on Count II; not guilty on Count I and Count II.

These circumstances demonstrate the lack of merit in appellant's Point IV. They show an absence of confusion. They show two crimes charged and two crimes proved; thus, the jury was not asked to make two findings of guilty on one charge. They show that as stated by the court the jury was trying "two distinct cases." They show the "issue of fact" to be that of guilt or innocence raised by defendant's pleas. They show that the jury was empowered to assess separate punishments for separate crimes, if the jury so found; thus there was no double jeopardy by way of double punishment for a single crime.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.